Djuan EDWARDS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0605–CR–414.

Court of Appeals of Indiana.

March 20, 2007.

Marshelle Dawkins Broadwell, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Djuan Edwards (Edwards), appeals his convictions for Counts I and II, murder, felonies, Ind. Code § 35–42–1–1, and Counts III, IV, and V, conspiracy to commit murder, Class A felonies, I.C. §§ 35–42–1–1 and 35–41–5–2.

We affirm.

### ISSUES

Edwards raises four issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court abused its discretion by admitting hearsay evidence related to two prior shootings and evidence relating to jail house phone calls; and

(2) Whether the trial court properly denied Edwards' Motion for Directed Verdict.

### FACTS AND PROCEDURAL HISTORY

In May of 2004, Jermaine Foster (Foster) lived on Schofield Avenue in Indianapolis. Michael Moss (Moss) was a neighbor and friend of Foster's brother and also lived in a duplex on Schofield Avenue. Moss' relatives lived in the other side of the duplex. Foster frequently saw Edwards at Moss' duplex and with Moss' relatives. Foster did not know Edwards, but suspected him of dealing drugs and asked that he not engage in such activities in front of his mother's house, which was located across the street from Moss' house. Edwards was receptive of the request.

On May 29, 2004, Edwards shot Foster and Michael Solomon (Solomon), a friend of Foster's, after they went to Moss' house to warn him Edwards had been watching the home. Foster was injured and Solomon was killed. After being shot Foster called 911 and identified Edwards as the shooter. April Adkisson (Adkisson) also called 911 after the shots were fired and gave a description of Edwards' clothes and the type of car he was driving. Adkisson also identified Edwards from a police line up as the shooter. Moss also identified Edwards as the shooter. Adkisson was dating Moss at the time of the shooting.

On June 1, 2004, Edwards turned himself into the Marion County Jail. Prior to turning himself in, however, Edwards spoke with his cousin, Adrian Edwards (Adrian). Adrian told Edwards, "ain't got no witnesses—ain't got no case...." (Tr. p. 601). It was also understood by Adrian, Brandon Hardiman (Hardiman) and Christopher Ealy (Ealy), Adrian and Edwards' friends, that Moss was not to appear in court. Beginning the same day he turned himself in, Edwards began making calls from jail.

On June 3 and 4, 2004, Hardiman and Ealy saw Moss in his yard and called Adrian. On June 4, 2004, Edwards was notified three witnesses had been listed as witnesses against him in the Solomon murder case—Foster, Moss, and Adkisson. At approximately 10:00 p.m. that night, in a taped phone conversation between Edwards and Ealy, Edwards said, "yeah, there's only three witnesses" and "I already know he's been straight fishin' for [n* * *ers]." (Tr. p. 555). Edwards also told Ealy that Adkisson was staying with Moss.

Early on June 10, 2004, officers responded to Schofield Avenue only to find Moss lying dead in the yard and Adkisson lying dead in the house. Adrian told Hardiman

that he and someone else from the neighborhood "... kicked in the door," and "shot the bitch in the face." (Tr. pp. 503–04). At approximately 11:15 that morning, Edwards told Ealy, "Well, you got to buy that last one for me, too, man ... for real cause that's the last car I need ... please man, make sure you do that for me, man...." (Tr. pp. 570–71). Edwards also told Ealy to buy "B & B Blue Car." (Tr. p. 647). Foster drove a blue car and Ealy took the conversation to mean Foster needed to be killed.

On August 11, 2004, the State filed an Information charging Edwards with Counts I and II, murder, felonies, I.C. § 35–42–1–1, and Counts III through V, conspiracy to commit murder, Class A felonies, I.C. §§ 35–42–1–1, 35–42–5–2.

On February 21, 2006, the State filed notice of intention to introduce evidence of other bad acts committed by Edwards as proof of motive for the conspiracy to commit murder. Specifically, the State sought to introduce evidence that on May 17, 2004, Edwards shot Moss multiple times after Moss objected to the sale of drugs near his home, and that he conspired to kill Moss and Adkisson so that they would be unavailable to testify against him for the murder of Solomon and attempted murder of Foster. The trial court submitted the following Order, in pertinent part:

### ORDER

1. Prior to offering the testimonial hearsay statements of [Adkisson] and [Moss] under the "forfeiture by wrongdoing" exception, the [S]tate must first present independent proof of [Edwards] and [Adrian's] conspiracy to kill Adkisson and Moss, to establish that the witnesses are unavailable due to the accused's wrongful acts.

2. Evidence of drug dealing activities on the 3500 block of Schofield by [Edwards] in the month of May 2004 are relevant to show motive and the nature of the relationship between [Edwards] and [Moss], and knowledge. The court will allow [Foster] to testify regarding what appeared to be drug selling in May of 2004 and his conversations with [Edwards] in this regard.

3. Evidence of the shooting that occurred on May 17, 2004, specifically: [Moss'] identification of [Edwards] as the shooter in the redacted telephonic statement to [Detective Gooch] and the photo array administered by [Detective Gooch], are relevant to explain the identity of [Edwards] as the shooter on May 17, 2004, and to establish the nature of the relationship between [Edwards] and Moss. Further, this evidence is relevant to show [Edwards] drug trade and eliminate Moss from testifying against him for shooting Moss in the leg. The probative value of this evidence outweighs any prejudicial impact.

4. Evidence that [Moss] and [Adkisson] were listed as witnesses in the matter involving the shooting of [Solomon] and [Foster] on May 29, 2004[,] is relevant to show motive, knowledge of [Edwards] and the nature of the relationship between [Edwards] and the witnesses. The court will allow [Foster's] testimony about the identity of the shooter on May 29, 2004. The 911 call from [Adkisson] on May 29, 2004[,] is non-testimonial and admissible as a present sense impression. The photographic array signed by [Adkisson], [Moss], and [Foster] identifying [Edwards] as the shooter on May 29, 200[4,] is admissible to show identity, motive and knowledge.

5. Admission of the charging information against [Edwards] for the murder of [Solomon] and attempt murder of [Foster], will not be admissible as the prejudicial impact of this document outweighs its probative value.

6. Hearsay testimony from Detective Mannina with regard to [Edwards] being identified as the shooter may be relevant; however it is cumulative and carries very little probative value. Hearsay testimony in this regard from Detective Mannina will not be allowed.

7. The State may not offer evidence that [Edwards] was convicted of the murder of Solomon and attempt murder of Foster.

* * *

8. The trial court will admonish the jury following the presentation of any 404(b) evidence pertaining to [Edwards]. Said evidence is not offered to show [Edwards'] propensity to commit bad acts, but to show motive, knowledge[,] and the relationship between [Edwards] and [Moss].

(Appellant's App. pp. 145–47) (internal citations omitted).

On March 27 through March 30, 2006, a jury trial was held. Edwards was found guilty of all counts as charged. On April 21, 2006, the trial court held a sentencing hearing. Edwards was sentenced to fifty-five years on Count I, fifty-five years on Count II, and thirty years on Count V, all to run consecutive for a total executed sentence of one hundred forty years in the Department of Correction. The judgment of conviction for Count III, conspiracy to commit the murder of Moss, was vacated

as it merged with Count I, murder of Moss. As well, the judgment of conviction for Count IV, conspiracy to commit the murder of Adkisson, was vacated as it merged with Count II, murder of Adkisson.

Edwards now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Properly Admitted Evidence

Edwards argues the trial court abused its discretion by admitting (1) evidence relating to hearsay statements made by Moss and Detective Christina Mannina (Detective Mannina); (2) evidence of Edwards' prior bad acts as they were more prejudicial than probative; and (3) conversations Edwards had with various individuals while incarcerated.

 The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Farris v. State*, 818 N.E.2d 63, 67 (Ind.Ct.App.2005), *trans. denied.* We will reverse a trial court's decision only for an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before it. *Id.* The improper admission of evidence is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction. *Beach v. State*, 816 N.E.2d 57, 59 (Ind.Ct.App.2004).

### A. Conversation Between Moss and Officer Gooch

 First, Edwards contends the trial court abused its discretion by admitting a taped conversation between Moss and Officer Gooch where Moss implicated Edwards in Solomon's murder. Specifically, Edwards argues that since this court had already decided the taped conversation between Moss and Officer Gooch was inadmissible in its prior decision of *Edwards v. State*, 855 N.E.2d 1079 (Ind.Ct.App.2006). Thus, the same decision must be reached in this case as well. *See* Ind. Appellate Rule 65(D).

 Although *Edwards v. State*, 855 N.E.2d 1079 (Ind.Ct.App.2006), was an unpublished opinion, pursuant to Ind.App. R. 65(D) it is applicable in the instant case. Ind.App. R. 65(D) states, "unless later designated for publication, a not-for-publication memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish *res judicata*, collateral estoppel, or law of the case." Issue preclusion, or collateral estoppel, bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. *Afolabi v. Atlantic Mortg. & Investment Corp.*, 849 N.E.2d 1170, 1175 (Ind.Ct.App.2006). Where collateral estoppel is applicable, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. *Id.* However, the former adjudication will only be conclusive as to those issues that were actually litigated and determined therein. *Id.* Collateral estoppel does not extend to matters that were not expressly adjudicated and can be inferred only by argument. *Id.* In determining whether to allow the use of collateral estoppel, the trial court must engage in a two-part analysis: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue, and (2) whether it is otherwise unfair to apply collateral estoppel given the facts of the particular case. *Id.* at 1175–76.

Both Edwards and the State were parties to the prior action and fully and fairly litigated the issue. Additionally, it would not be unfair to apply collateral estoppel to the facts of this case—the law has not changed regarding forfeiture by wrongdoing as applied in our unpublished opinion guaranteeing the same result were we to revisit the issue here. Thus, we find in accordance with our previous opinion that the trial court abused its discretion by allowing the recorded conversation under the forfeiture by wrongdoing theory.

■ However, we also find, consistent with a previous panel of this court, that the admission of this conversation constitutes harmless error. The introduction of the recorded conversation is cumulative of other evidence. All parties stipulated Edwards knew that Foster, Moss, and Adkisson were listed as witnesses for Edwards murder and attempt murder charges. Edwards shot Foster and shot and killed Solomon, and immediately after the shooting, Foster called 911 and identified Edwards as the shooter. Thus, we find the admission of the recorded conversation between Moss and Officer Gooch did not affect the jury's decision and the error of admission harmless.

### B. *Testimony of Detective Mannina*

■ Edwards next claims the admission of Detective Mannina's testimony was in error. Specifically, Edwards suggests that because the trial court previously stated, "[h]earsay testimony from Detective Mannina with regard to [Edwards] being identified as the shooter may be relevant; however it is cumulative and carries very little probative value" and "will not be allowed," the trial court abused its discretion. (Appellant's App. p. 145). We disagree.

At most Detective Mannina's testimony was cumulative and as such was harmless

error. Detective Mannina testified that Moss and Adkisson told her Edwards was involved in the May 29 shooting. However, there was other evidence introduced at trial indicating Edwards was in fact involved in the May 29 shooting, *i.e.*, Foster's testimony that Edwards shot him on May 29. Since the improper admission of evidence is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction, we find the admission of Detective Mannina's testimony harmless. *See Beach v. State*, 816 N.E.2d at 59.

### C. *Prior Shootings*

Next, Edwards argues the probative value of evidence relating to the May 17 and May 29 shootings was outweighed by the prejudicial effect of the large volume of testimony and evidence the trial court allowed regarding these prior bad acts. Specifically, Edwards claims the evidence that he was a drug dealer and had shot people in the past was much more prejudicial than probative.

The State argues that the evidence related to the May 17 and 29 shootings was definitely probative, and if cumulative was harmless. First, the State submits the shooting on May 17 is probative as it demonstrates Edwards' general intent to kill Moss. Further, the State reminds us that Edwards did not object to Foster's testimony regarding the shooting on May 29, or that it was related to suspected drug trafficking. Thus, the State contends the probative value of the Edwards drug ties outweighs the danger of any unfair prejudice, or was waived by Edwards for failing to object to its admission at trial. Regardless, however, of any drug dealings, the State argues the trial court properly admitted evidence of the May 29 shooting as evidence of Edwards' motive and intent

that if there were no witnesses then there would be no case against him.

Indiana Evidence Rule 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The rationale behind Ind. Evid. R. 404(b) is well established: the jury is precluded from making the "forbidden inference" that the defendant had a criminal propensity, and therefore, engaged in the charged conduct. *Goldsberry v. State*, 821 N.E.2d 447, 455 (Ind.Ct.App.2005).

■■■■■ In evaluating the admissibility of evidence under Evid. R. 404(b), a trial court must: (1) decide if the evidence of other crimes, wrongs, or acts is relevant to a matter other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Ind. Evid. R. 403. *Id.* Even if evidence of prior bad acts is admissible, its probative value must still be weighed against the unfair prejudice its admission may cause a defendant. *Id.*

■■■ In the case at bar, as the State concedes, the May 17 shooting has "little or no probative value supporting Moss' elimination as a witness." (Appellee's Br. p. 13). However, the admission of such evidence is harmless as we find there is independent substantial evidence of guilt: Moss was a witness to the May 29 shooting; several conversations were had between Edwards and other persons supporting the belief that no witnesses meant there would be no case against him; thus, the intent to induce someone to murder

Moss was present through other independent evidence to convict Edwards.

### D. *Indiana Wiretap Act*

■■■ Edwards also claims the trial court abused its discretion by allowing phone calls he made from jail to be introduced into evidence as they violated the Indiana Wiretap Act. The State argues that the tapes were properly admitted under the consent exception to the Wiretap Act.

The Indiana Wiretap Act states:

(a) This section does not apply to a person who makes an interception authorized under federal law.

(b) A person who knowingly or intentionally intercepts, a communication in violation of this article commits unlawful interception, a Class C felony.

(c) A person who, by virtue of the person's employment or official capacity in the criminal justice system, knowingly or intentionally uses or discloses the contents of an interception in violation of this article commits unlawful use or disclosure of an interception, a Class C felony.

I.C. § 35–33.5–5–5. The Indiana Wiretap Act defines interception as follows:

Interception means the intentional:

(1) recording of; or

(2) acquisition of the contents of;

a telephonic communication by a person other than a sender or receiver of that communication, without the consent of the sender or receiver, by means of any instrument, device, or equipment under this article. This term includes the intentional recording of communication through the use of a computer or a FAX (facsimile transmission) machine.

I.C. § 35–33.5–1–5. Thus, the recording of a communication with the consent of either

the sender or receiver is not an interception. *See* I.C. § 35–33.5–1–5; *see also Packer v. State,* 800 N.E.2d 574, 582 (Ind. Ct.App.2003), *trans. denied.*

In the instant case, Edwards argues, "inmates do not consent to the recording" of telephone calls made from jail. (Appellant's Br. p. 18). Thus, Edwards claims the recorded conversations are "interceptions" pursuant to I.C. § 35–33.5–1–5. Furthermore, Edwards contends the State did not prove he "heard the warning, understood the warning[,] or could read the [inmate] handbook" explaining the possible recording. (Appellant's App. p. 19). However, even if everything Edwards claims is true, he has neglected a key component of I.C. § 35–33.5–1–5—that the "sender" is not the only person capable or necessary to give consent; the receiver is also capable of providing consent. *See* I.C. § 35–33.5–1–5 ("without the consent of the sender or *receiver* ").

While never before in Indiana has a decision hinged on the consent of the receiver, this case does. As evidenced by the record, each time a Marion County Jail inmate makes an outgoing call the recipient hears the following message:

> Thank you for using SBC Public Communications. This call may be recorded or monitored. I have a collect call from . . . an inmate at Marion County Jail. Press zero during the message to accept this call. Rate is . . . thank you.

(Tr. pp. 525, 526, 529, 551, 556, 558, 569, 572, 574).

Here, no evidence was produced suggesting the recipients of the phone calls did not hear the admonishments. We can infer from the evidence only that the admonishment was given and the recipient pressed zero, indicating consent to the interception and recording of the call. Therefore, the interception is not a violation of the Indiana Wiretap Act, and the recordings are admissible.

II. *Motion for Directed Verdict*

Edwards lastly contends the trial court erred when it denied his Motion for Directed Verdict. Specifically, Edwards claims the State failed to present sufficient evidence to prove his accomplice liability.

In order for a trial court to appropriately grant a motion for a directed verdict, there must be a total lack of evidence regarding an essential element of the crime, or the evidence must be without conflict and susceptible only to an inference in favor of the innocence of the defendant. *Proffit v. State,* 817 N.E.2d 675, 680 (Ind.Ct.App.2004), *trans. denied.* If the evidence is sufficient to sustain a conviction upon appeal, then a motion for a directed verdict is properly denied; thus, our standard of review is essentially the same as that upon a challenge to the sufficiency of the evidence. *Id.* We neither reweigh evidence nor judge witness credibility, but consider only the evidence that supports the conviction and the reasonable inferences to be drawn therefrom in order to determine whether there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.*

To convict Edwards of murder via accomplice liability, the State was required to show that he knowingly or intentionally aided, induced, or caused someone else to commit the murders, regardless of if the actors were not prosecuted, convicted, or were acquitted. *See* I.C. § 35–41–2–4.

Here, the record shows that police officers listened to over twenty hours of phone conversations recorded from the Marion County Jail. Based on the sheer volume of tapes together with Ealy and

Hardiman's testimony, it was believed Edwards was the caller. Detective Wager testified Edwards was speaking in code to Adrian, Ealy, and Hardiman. Edwards argues that without Ealy and Hardiman's testimony the State did not have a case against him. Essentially, Edwards is inviting us to reweigh the evidence. We decline the invitation.

In a phone call made on June 2, Edwards asked Hardiman, "[W]hat y'all been doing—huntin' and shit?" (Tr. p. 530). Adrian also told Edwards, "[T]he only thing they got is no witness[es]," and "I'm tryin' to have your back out there." (Tr. p. 531).

On June 4, Edwards learned that Foster, Moss, and Adkisson were listed as witnesses by the State in the case against him for Solomon's murder. Then on the morning of June 10, Moss and Adkisson were killed. Adrian told Edwards that someone killed Moss. Later that day in telephone conversations with Ealy, Edwards said, "Well, you got to buy that last one for me, too, man ... for real cause that's the last car I need ... please man, make sure you do that for me, man...." (Tr. pp. 570–71). Edwards also told Ealy to buy "B & B Blue Car." (Tr. p. 647). Ealy responded, "Yeah—I'm gonna buy it...." (Tr. p. 571). Ealy took that exchange to mean Foster, who drove a blue car, needed to be killed.

Accordingly, the State presented sufficient evidence to permit the fact-finder to conclude beyond a reasonable doubt that Edwards knowingly or intentionally aided, induced, or caused someone else to commit the murders. *See* I.C. § 35–41–2–4. Thus, the trial court was not compelled to grant Edwards' Motion for Directed Verdict.

## CONCLUSION

Based on the foregoing, we find the trial court did not abuse its discretion by admitting hearsay evidence related to two prior shootings and evidence relating to jail house phone calls, and the trial court properly denied Edwards' Motion for Directed Verdict.

Affirmed.

KIRSCH, J., and FRIEDLANDER, J., concur.