**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 01 2013, 6:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRANDON E. MURPHY**
Public Defender's Office
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONALD R. GREEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1212-CR-1032 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Thomas A. Cannon, Jr., Judge
Cause No. 18C05-1209-CM-7

**August 1, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

After a jury trial, Donald R. Green ("Green") was convicted of domestic battery[1] as a Class A misdemeanor. Green now appeals raising the following two arguments:

I. Whether the trial court erred in denying his motion for discharge pursuant to Indiana Criminal Rule 4(C); and

II. Whether the trial court erred in denying his motion for a directed verdict.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In April 2011, Green was living with Amanda Barger in Muncie, Indiana. They had been in a physically intimate, romantic relationship for approximately nine months and saw each other every day. Prior to this time, Green and Barger communicated daily over the course of more than two years.

In the late spring of 2011, Green rented a house and invited Barger to stay with him. They lived together for about four weeks leading up to April 29, 2011. On that date, Green left around 6:00 p.m.to go out to the bars, and Barger stayed at the residence. Green returned at approximately 3:30 a.m. the next morning, intoxicated and unstable on his feet. He asked Barger to make food for him, but she refused, stating that she wanted to go to bed. Green then began to cook food in the oven. Before Barger went to bed, she suggested that Green check on the food. When Green checked on the food, he burned himself and screamed. He yelled at Barger, stating that it was her fault.

Green grabbed Barger and slammed her into the kitchen wall. He kicked and hit

---

[1] *See* Ind. Code § 35-42-2-1.3.

her and then grabbed Barger by the neck and threw her to the floor. There, he straddled Barger, grabbed her by the throat, and punched the side of her face and the back of her head.

Eventually, Barger retreated to the bathroom and attempted to retrieve her purse from the bedroom so she could leave. Green prevented her from leaving by holding the bedroom door shut. He then entered the bedroom, grabbed Barger by her hair and dragged her into the living room and kicked her. Green continued to hit Barger for several more minutes. Eventually, Barger was able to get up and run out of the back door to her car where she called an ex-boyfriend who, in turn, called the police.

When the police arrived, Barger was standing in the street with visible cuts, scratches, and abrasions on her face and chest. She was crying, shaking, and her face was swollen.

Green was arrested and charged with domestic battery and intimidation, both Class A misdemeanors.

Green moved for a speedy trial, and twice moved for discharge pursuant to Indiana Criminal Rule 4(C). The trial court denied both motions, and a jury trial commenced on November 29, 2012.

During the trial, the State dismissed the intimidation count, and Green's motion for a directed verdict at the close of the State's case-in-chief was overruled. *Tr*. at 88–91. The jury convicted Green of domestic battery as a Class A misdemeanor. He now appeals.

**DISCUSSION AND DECISION**

Green raises two arguments on appeal. First, Green contends that the trial court erred in denying his motion for discharge pursuant to Indiana Criminal Rule 4(C). Second, Green contends that the trial court erred in denying his motion for a directed verdict.

## I. Criminal Rule 4(C)

The right of the accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 12 of the Indiana Constitution. *Collins v. State*, 730 N.E.2d 181, 182 (Ind. Ct. App. 2000). The provisions of Indiana Criminal Rule 4 implement the defendant's speedy trial right by establishing time deadlines by which trials must be held. *Id.*

Indiana Criminal Rule 4(C) provides in relevant part:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar . . . . Any defendant so held shall, on motion, be discharged.

Ind. Crim. Rule 4(C). The rule places an affirmative duty on the State to bring a defendant to trial within one year of being charged or arrested, but allows for extensions of that time for various reasons. *Cook v. State*, 810 N.E.2d 1064, 1065 (Ind. 2004). "If a delay is caused by a defendant's own motion or action, the one-year time limit is extended accordingly." *Id.* at 1066 (internal citations omitted). This is so, whether or not

a trial date has been set. *Id.* at 1067.

Green's trial was held more than one year after he was charged. Indeed, 573 days elapsed between the filing of the charges and the trial.

When reviewing a Criminal Rule 4(C) motion, we defer to the trial court's factual findings but consider questions of law de novo. *Todisco v. State*, 965 N.E.2d 753, 755 (Ind. Ct. App. 2012) (citing *Feuston v. State*, 953 N.E.2d 545, 548 (Ind. Ct. App. 2011)).

Green does not dispute that he is responsible for 168 days of delay. This period arises because Green failed to appear for his initial hearing on June 6, 2011 and then requested that his review hearing date be reset, causing a delay until September, 19, 2011 (105 days) and because Green failed to meet with his public defender on December 12, 2012, causing his meeting to be delayed until February 13, 2012 (63 days). *Appellant's App*. at 56, 58. In addition to these periods, the 99-day delay from March 12, 2012 to June 19, 2012 is also chargeable to Green. On March 12, 2012, Green failed to meet with his public defender for the third time. On that date, Green's counsel made a request for disposition, and the disposition hearing was set for June 19, 2012. *Id.* at 58. Although Green argues that the disposition hearing was set by the trial court, the trial court found that the "request for the disposition made by . . . counsel of record . . . is attributable to the defendant." *Tr.* at 15. Giving due deference to the trial court's findings, it was Green's counsel who requested the disposition hearing, and any delay resulting from that request is attributable to Green.

From June 6, 2011 through June 19, 2012, 267 days of delay are attributable to Green. Subtracting these 267 days from the 573 days that elapsed between the charging

5

date and the date of Green's trial leaves 306 days chargeable to the State, well within the 365-day speedy trial period guaranteed by Criminal Rule 4(C). Although the State contends that there were other time periods that are also properly chargeable to Green, we do not need to consider such periods. The trial court properly denied Green's motions for discharge.

## II. Directed Verdict

Green's second argument is that the trial court erred in denying his motion for a directed verdict at the close of the State's case-in-chief. The standard of review for a motion for a directed verdict is essentially the same as that upon a challenge to the sufficiency of the evidence. *Edwards v. State*, 862 N.E.2d 1254, 1262 (Ind. Ct. App. 2007). We neither reweigh the evidence nor judge witness credibility, but consider only the evidence that supports the conviction and the reasonable inferences to be drawn therefrom. *Id.* The key inquiry is whether there is substantial evidence from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.*

To convict Green of domestic battery, the State was required to show that he knowingly or intentionally touched an individual, who was living as if his spouse, in a rude, insolent, or angry manner, resulting in bodily injury. *See* Ind. Code § 35-42-2-1.3(a). Green argues that the State failed to prove that the victim was living as if Green's spouse.

In considering whether a person is or was living as a spouse, the court shall review: (1) the duration of the relationship; (2) the frequency of contact; (3) the financial

6

interdependence; (4) whether the two individuals are raising children together; (5) whether the two individuals have engaged in tasks directed toward maintaining a common household; and (6) other factors the court considers relevant. *See* I.C. § 35-42-2-1.3(c). These factors are not a litmus test and "[w]hen the character of the relationship clearly warrants application of the domestic battery statute, *i.e.*, the couple is cohabiting and engaged in an ongoing romantic relationship, a court would not need to undertake further analysis." *Williams v. State*, 798 N.E.2d 457, 461 (Ind. Ct. App. 2003).

Here, Barger testified that at the time of the battery she and Green had been in a romantic, intimate relationship. Green and Barger were in this physical relationship for approximately nine months. For about four weeks prior to the incident, Green and Barger were cohabiting, sharing a bed at Green's residence. Barger had a key to the house and was free to come and go as she pleased. Green paid the bills, while Barger assumed cooking and cleaning responsibilities. She kept all of her clothes at the residence. Barger helped Green shop for clothes and hygiene products. Barger testified that she loved Green, believed he loved her too, and that they exchanged words of affection. Green referred to Barger as his "wifey," indicative of the type of relationship he believed himself to be in. *Tr.* at 34.

Viewed consistently with our standard of review, this evidence is sufficient to prove that the character of Green's relationship with the victim implicated the harm the domestic battery statute sought to prevent. The trial court did not err in denying Green's motion for a directed verdict. Affirmed.

ROBB, C.J., and RILEY, J., concur.