## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 27 2016, 6:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristina J. Jacobucci
Newby, Lewis, Kaminski & Jones, LLP
La Porte, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James. B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Trevon Drakkar Walker,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 27, 2016

Court of Appeals Case No.
46A04-1509-CR-1413

Appeal from the LaPorte Superior Court

The Honorable Michael S. Bergerson, Judge

Trial Court Cause No.
46D01-1211-MR-547

**Mathias, Judge.**

[1] Trevon Walker ("Walker") was convicted in LaPorte Superior Court of felony murder, Class A felony robbery, and Class D felony auto theft and was

sentenced to an aggregate term of sixty-three years with three years suspended to probation. Walker appeals and presents two issues, which we restate as: (1) whether the trial court erred in denying Walker's motion for judgment on the evidence; and (2) whether Walker's sixty-three-year sentence is inappropriate.

[2] We affirm.

## Facts and Procedural History

[3] The victim in this case, Gerald Peters ("Peters") was a sixty-nine-year-old retired school teacher. In his retirement, Peters was a part owner of an ice cream parlor and sandwich shop and was also involved with the local Main Street Theater. Peters had lived at a house on Walker Street in Michigan City, Indiana for most of his life.

[4] Prior to his death, Peters met Ryan Phelps ("Phelps"), who was homeless. Peters allowed Phelps to stay at his home because Phelps had nowhere else to go. After a while, though, Peters told Phelps he had to leave, because Peters suspected that Phelps had been stealing from him. Still, Peters planned to buy Phelps a winter coat to help him stay warm and told Phelps that he could use his house to shower.

[5] Phelps decided to repay Peters' generosity by robbing him. Phelps met with with Martell Anderson ("Anderson"), MJoseph[1] Basford ("Basford"), and defendant Trevon Walker ("Walker") at the home of Walker's cousin. Walker,

---

[1] This is how Basford's first name is spelled in the transcript.

who had known Anderson since elementary school, approached Anderson and informed him that he needed help with a robbery. Walker recruited Basford because the group needed a baseball bat to carry out their plan, and Walker knew that Basford carried a baseball bat. Ultimately, the group decided that Phelps would trick Peters into letting him in the house on the pretense that Phelps needed to shower. Phelps would leave the back door unlocked as he went in the home, allowing the other three to enter the home to incapacitate Peters and steal items from the home.

[6] On November 7, 2012, Walker, Phelps, Basford, and Anderson went to Peters's home. Phelps went in the main door and opened the back door to the basement for the others to enter, where they further formulated their plan. Phelps called Peters into the basement, where Basford struck him with a glass milk bottle. Although Peters fell down, he was still conscious. Phelps initially acted as if he was not part of the robbery. After Peters fell down, Anderson and Walker started to punch him, and then Anderson, Walker, and Basford began to kick him. They then went upstairs and took jewelry and Peters's wallet, which contained his credit cards.

[7] Phelps, who had apparently remained downstairs, informed the others that Peters was getting back up. The others then returned to the basement, and Walker struck Peters in the head and abdomen with Basford's baseball bat. Anderson then took the bat and began to beat Peters. When Peters attempted to rise on one knee, Anderson continued the beating until Peters fell back down to the ground. Basford took a rifle that was hanging on the basement wall, and

Walker took the keys from Peters's pocket. As they prepared to leave, Phelps took bleach, grabbed Peters by the face, and poured bleach on his face and down his throat. Phelps also turned on all of the gas burners on Peters's stove, apparently hoping to blow up the house in a natural gas explosion.

[8] Walker, Anderson, and Basford then entered Peters's car, and Walker drove them away from the scene, while Phelps left in the other direction. Walker, Anderson, and Basford first drove to LaPorte, where they disposed of the bat. They then went to Basford's home in Lakeland, so he could change clothes. Ultimately, they returned to Walker's cousin's house, where they had initially planned the robbery, and the others changed their clothes, too. Phelps eventually returned to Walker's cousin's home, as well. Walker took Peters's car and left.

[9] Peters died as a result of the injuries he sustained during the beating. The blood stains in the basement indicated that he attempted to rise after his beating before ultimately collapsing near the furnace and succumbing to his injuries. The post-mortem examination of Peters's body revealed that he had sustained at least eleven lacerations to his face and head as a result of blunt-force trauma. He also had numerous blunt-force injuries and contusions on the rest of his body, especially his chest. He also suffered from chemical burns on his chest as a result of the bleach. Peters's lower back also sustained severe damage, which had two parallel contusions that could have been caused by a long, linear object such as a baseball bat. Peters had brain contusions, a fractured skull, and brain hemorrhaging. The cause of his death was blunt-force injuries to his head.

[10] Peters's cousin Kip Piper ("Piper") co-owned a restaurant with Mike Howard ("Howard"), and the two were also partners with Peters in the sandwich and ice cream shop. On the afternoon of November 7, 2012, Peters was supposed to be at the Main Street Theater to open it for auditions. When Peters did not show, someone called the restaurant. This prompted Howard to telephone Peters, but Peters did not pick up. Howard then attempted to reach Peters at the theater to no avail. The next morning, Howard decided to stop by Peters's home on his way to Michigan.

[11] When Howard pulled up to Peters' home the following morning, he saw that the lights and television were on but did not see Peters's car. Howard knocked on the door, but no one answered. Howard also noticed the smell of natural gas coming from the house. Concerned with Peters's welfare, Howard called the local hospital to see if Peters had been admitted. When he learned that Peters was not at the hospital, he telephoned Peters' cousin Piper and asked him to check in on Peters.

[12] Piper and his girlfriend then drove to Peters's home to check on him. When they arrived, they too noticed that the lights and television were on. When no one answered the door, they went around to the basement door and found it unlocked. They entered and saw the house had been ransacked and blood on the floor. They then called 911 and waited for the police to arrive.

[13] The police arrived and entered the home. They too saw blood smeared on the floor and noticed that the burners on the gas stove had been turned on but were

not lit. They found Peters's body near the furnace. Later that afternoon, the police located Peters' stolen car only a few blocks away from his house. The police kept watch over the car to see if anyone would access it. Eventually, Walker entered the car with his cousin and drove away. When the police tried to stop the vehicle, Walker led them on a short high-speed chase before crashing the car in a wooded area and fleeing on foot. Walker was soon apprehended and detained by the police. Walker had Peters's mobile phone on him when detained, and blood stains on the floor mats of Peters's car contained Peters's blood.

[14] The police then interviewed Walker, who initially claimed that he received the car from Phelps, who claimed to have bought the car. He then told the police that Phelps and Anderson told him they took the car from "the old man." Ex. Vol., State's Ex. 394. Walker then claimed that Phelps had told him where to find the car, and he retrieved it. Walker denied having gone inside Peters' home and stated that he did not know that Peters was dead until the police told him so.

[15] On November 9, 2012, the State charged Walker as follows: Count I, murder; Count II, felony murder; and Count III, Class A felony robbery. The State subsequently amended the charging information to add Count IV, Class D felony auto theft. A jury trial was held from May 26 to June 2, 2015. At the conclusion of the State's case-in-chief, Walker moved for a judgment on the evidence, which the trial court denied. Walker then rested his case without

presenting any evidence. The jury found Walker not guilty on Count I but guilty on the remaining counts.

[16] At the August 7, 2015, sentencing hearing, the trial court "merged" the robbery conviction with the felony murder conviction and sentenced Walker to sixty years for the felony murder conviction, with three years suspended to probation. The trial court imposed a three-year sentence on the auto theft conviction, to be served consecutively to the sentence on the felony murder conviction. Thus, Walker was sentenced to an aggregate term of sixty-three years, with three years suspended to probation. Walker now appeals.

## I. Judgment on the Evidence

[17] Walker first argues that the trial court erred in denying his motion for judgment on the evidence. A judgment on the evidence, also known as a directed verdict, is governed by Indiana Trial Rule 50(A), which provides in relevant part:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict. A party may move for such judgment on the evidence.

[18] When a defendant moves for a directed verdict or judgment on the evidence, the trial court must grant the motion only if: (1) the record is devoid of evidence on one or more elements of the offense; or (2) the evidence presented is without conflict and subject to only one inference, which is favorable to the defendant.

*Pavlovich v. State*, 6 N.E.3d 969, 980 (Ind. Ct. App. 2014), *trans. denied.* On appeal, our review of the denial of a motion for directed verdict or judgment on the evidence is essentially the same as review of a claim of insufficient evidence to support a conviction. *Id.* (citing *Edwards v. State*, 862 N.E.2d 1254, 1262 (Ind. Ct. App. 2007), *trans. denied*).[2] Accordingly, we will neither reweigh evidence nor judge witness credibility. *Id.* Instead, we must consider only the evidence supporting the conviction and any reasonable inferences to be drawn therefrom, and we will affirm if substantial evidence of probative value exists from which a reasonable trier of fact could have concluded beyond a reasonable doubt that the defendant was guilty of the charged crime. *Id.* A defendant's motion for judgment on the evidence should not be granted if the State presents a *prima facie* case. *Garcia v. State*, 979 N.E.2d 156, 158 (Ind. Ct. App. 2012).

[19] In the present case, Walker was convicted of felony murder based on Peters's death during the robbery. "Felony murder" is a term used to describe a crime punishable as murder under Indiana Code subsections 35-42-1-1(2) and (3), but where the defendant did not necessarily intentionally or even recklessly kill the victim, or may not have been the killer at all. *Pittman v. State*, 885 N.E.2d 1246, 1258 (Ind. 2008). To convict Walker of felony murder, the State was required to prove beyond a reasonable doubt only that the defendant "kill[ed] another

---

[2] In his reply brief, Walker claims that the standard of review for sufficiency of the evidence and a motion for judgment on the evidence are "inherently different." Appellant's Reply Br. p. 2. To the contrary, our supreme court has directly stated that "[t]he standard of review for a denial of a Motion for Judgment on the Evidence and for a challenge of insufficiency of the evidence is the same." *Jones v. State*, 472 N.E.2d 1255, 1259 (Ind. 1985). *See also Pavlovich*, 6 N.E.3d at 980; *Edwards*, 862 N.E.2d at 1262.

human being while committing or attempting to commit . . . robbery[.]" Ind. Code § 35-42-1-1(2).

[20] This statute does not restrict "felony murder" solely to instances in which the defendant is the killer. *Layman v. State*, 42 N.E.3d 972, 977 (Ind. 2015) (citing *Palmer v. State*, 704 N.E.2d 126 (Ind. 1999)). The statute may equally apply when, in committing any of the designated felonies, the defendant contributes to the death of any person. *Palmer*, 704 N.E.2d at 126. Where a defendant reasonably should have foreseen that his felonious conduct would likely create a situation which would expose another to the danger of death, the creation of such dangerous situation is an "intermediary, secondary, or medium" in effecting or bringing about the death of the victim, and the defendant may be held accountable. *Id*. (citing *Shackles v. State*, 684 N.E.2d 201, 205 (Ind. Ct. App. 1997)); *accord Jenkins v. State*, 726 N.E.2d 268, 269 (Ind. 2000). Thus, to establish guilt pursuant to the felony murder statute, the State need not prove the intent to kill, but only the intent to commit the underlying felony. *Luna v. State*, 758 N.E.2d 515, 517 (Ind. 2001).

[21] Here, Walker claims that no evidence exists that he was even at the scene of the crime and that, even if he participated in the robbery, no evidence suggests that he could have reasonably foreseen that his involvement would result in the mediate or immediate cause of Peters' death. Both of these claims are without merit.

[22] First, evidence from which a reasonable jury could conclude beyond a reasonable doubt that Walker was at the scene of the crime is in the record. Both Anderson and Basford testified that Walker was there and participated in both the robbery and beating of Peters. Walker does not deny this but claims that these witnesses' testimonies are not worthy of credit because of various inconsistencies and because Basford had previously testified under oath that Walker was not present. These arguments, however, are nothing more than request that we reweigh the evidence and judge the credibility of these witnesses, which is beyond our role as an appellate court. *See Pavlovich*, 6 N.E.3d at 980. These arguments were better presented to the jury.[3] Based on the testimony of Anderson and Basford, a reasonable jury could have concluded that Walker was at the scene of the crime and participated in the robbery; thus, the trial court properly denied Walker's motion for judgment on the evidence to the extent he claimed that no evidence suggests he was at the scene of the crime.

[23] The same is true with regard to Walker's claim that no evidence indicates that he should have reasonably foreseen that his participation in the robbery would result in the mediate or immediate cause of Peters's death. A rational jury could conclude that Walker reasonably should have foreseen that four men robbing a

---

[3] In fact, Walker's trial counsel did impeach the credibility of both of these witnesses through their inconsistent statements and their desire to curry favor with the State by pleading guilty and implicating Walker. However, the jury rejected these claims, and we will not disturb the jury's verdict on appeal.

sixty-nine-year-old retiree and beating him with a bat could result in the victim's death.

[24] Because sufficient evidence was presented from which a reasonable jury could conclude that Walker was guilty beyond a reasonable doubt, the trial court properly denied his motion for judgment on the evidence. *See Lichti v. State*, 827 N.E.2d 82, 93 (Ind. Ct. App. 2005) (affirming defendant's conviction for felony murder even though victim's precise cause of death was impossible to determine where defendant kidnapped an elderly victim who had heart problems, bound him with duct tape, forced him to record a ransom message, and dumped him in a cornfield where his body was later found), *trans. granted*, *summarily aff'd in relevant part*, 835 N.E.2d 478 (Ind. 2005); *Kelly v. State*, 813 N.E.2d 1179, 1183 (Ind. Ct. App. 2004) (affirming defendant's conviction for felony murder where defendant and her cohorts planned to rob victim and force her to walk home naked, then abducted and brutally beat victim and took her personal belongings before one of the cohorts shot the victim), *trans. denied*.

## II. Appellate Rule 7(B)

[25] Walker also claims that his aggregate sentence of sixty-three years is inappropriate. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, [we] find that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we have the power to review and revise sentences, the principal role of our review should be to attempt to level the outliers, and identify some guiding principles for trial

courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case. *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied* (citing *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)).

[26] As an appellate court, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The question under Appellate Rule 7(B) is not whether another sentence is more appropriate; instead, the question is whether the sentence imposed is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). The advisory sentence is the starting point our General Assembly has selected as an appropriate sentence for the crime committed in assessing the nature of the offense. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[27] The advisory sentence for felony murder is fifty-five years, with a minimum sentence of forty-five years and a maximum sentence of sixty-five years. *See* Ind. Code § 35-50-2-3. Walker was also convicted of Class D felony auto theft. The advisory sentence for a Class D felony is one and one-half years, with a minimum sentence of one-half year and a maximum sentence of three years. Thus, Walker faced a minimum sentence of fifty-five years and a maximum

sentence of sixty-eight years. The trial court imposed a sentence of sixty-three years, which is above the advisory sentence but below the maximum sentence. With this in mind, we address Walker's claim that this sentence is inappropriate.

[28] The nature of the instant offense is particularly disturbing. Walker and his cohorts planned together to rob an elderly retiree who had done nothing other than offer Phelps a temporary place to live. Walker actively participated in the robbery and beating of Peters, hitting him in the head and abdomen with a baseball bat. After the others mercilessly beat Peters, Walker took the keys from his pocket and stole his car. Walker left Peters to die, beaten, tortured with bleach, and in a house filling with natural gas. The nature of the offense does nothing to persuade us that Walker's sixty-three-year sentence is inappropriate.

[29] Walker also complains that his acquittal on the murder charges means that he should not be held fully responsible for Peters's death, noting that Anderson beat Peters more severely. However, the fact that the jury acquitted Walker of intentional murder plays no role in our analysis. *See Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010) (holding that "verdicts in criminal cases are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable."). More importantly, Walker was not a passive participant in Peters's death. He recruited Anderson and Basford to assist with the robbery. Indeed, he recruited Basford because he knew that Basford had a baseball bat that could be used in the robbery. Again, Walker actively participated in the beating of Peters, hitting him in the head and abdomen with a bat.

[30] Considering the character of the offender, we recognize that this is Walker's first criminal conviction, and his history of juvenile delinquency consisted only of truancy. We further acknowledge that Walker was only seventeen years old at the time of the instant offense. In this regard, our supreme court has explained:

> Sentencing considerations for youthful offenders—particularly for juveniles—are not coextensive with those for adults. *See Miller v. Alabama*, —— U.S. ——, 132 S. Ct. 2455, 2469 (2012) (requiring the sentencing judge to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" (footnote omitted)). Thus, both at initial sentencing and on appellate review it is necessary to consider an offender's youth and its attendant characteristics.

*Brown v. State*, 10 N.E.3d 1, 6-7 (Ind. 2014); *see also Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014) (quoting *Brown*, 10 N.E.3d at 6-7).

[31] As recognized in *Brown* and *Fuller*, our supreme court "has not been hesitant to reduce maximum sentences for juveniles convicted of murder." *Id.* at 7. However, here, Walker's sixty-three-year sentence, with three years thereof suspended to probation, was not the maximum sentence possible, nor does it "forswear [] altogether the rehabilitative ideal." *Id.* (quoting *Miller*, 132 S. Ct. at

2465). In fact, if Walker receives Class 1 credit while incarcerated, his earliest possible release date would be 2042, when he his forty-seven years old.[4]

[32] This is in contrast to *Brown*, where the court held that a 150-year sentence was effectively a life sentence and was inappropriate given the defendant's age of sixteen at the time the murder was committed. 10 N.E.3d at 7. It is also in contrast to *Fuller*, where the court held that the 150-year sentence imposed on Brown's co-defendant Fuller, who was only fifteen years old at the time of the murder, was also inappropriate.[5] 9 N.E.3d at 659.

[33] Walker also cites to *Evans v. State*, 725 N.E.2d 850 (Ind. 2000), in support of his claim that his sentence is inappropriate in light of his age. However, in that case, the defendant received a maximum fifty-year sentence for his Class A felony conviction. *Id*. at 850. Our supreme court revised this sentence due to the defendant's young age at the time of the crime (nineteen), and due to the relatively innocuous nature of his crime (a controlled drug buy). In contrast, here, Walker was not given the maximum sentence, and the nature of his crime

---

[4] *See* http://www.in.gov/apps/indcorrection/ofs/ofs?lname=walker&fname=trevon&search1.x=0&search1.y=0 (indicating that Walker's earliest possible release date is December 25, 2042).

[5] Moreover, in both *Brown* and *Fuller*, which involved the same murder, the crime was "not particularly heinous," which is stark contrast to the brutal murder of Peters. *See Fuller*, 9 N.E.3d at 659 (quoting *Brown*, 10 N.E.3d at 5. Also, in these cases, our supreme court revised Brown's sentence to eighty years and Fuller's sentence to eighty-five years. *See Brown*, 10 N.E.2d at 8; *Fuller* 9 N.E.3d at 659. Even these revised sentences are more severe than Walker's sentence.

is particularly heinous — the brutal, unnecessary, and senseless beating death of an elderly retiree.[6]

[34] It is also quite noteworthy that the trial court found that Walker showed no remorse for his crimes. Although a court may not enhance a sentence for a defendant consistently maintaining his innocence if the defendant does so in good faith, a court may consider the defendant's lack of remorse. *Cox v. State*, 780 N.E.2d 1150, 1158 (Ind. Ct. App. 2002). "A lack of remorse is displayed by a defendant when he displays disdain or recalcitrance, the equivalent of 'I don't care.' This is distinguished from the right to maintain one's innocence, i.e., 'I didn't do it.'" *Id*. Here, the trial court specifically noted Walker's lack of remorse, not his maintenance of his innocence, which is proper and indicative of Walker's character.

[35] Walker also argues that his sentence is inappropriate because his actions were less egregious than those of Anderson and Basford, who who received more lenient sentences through plea agreements. This argument of comparative sentencing is inapposite, as we are concerned here only with the nature of

---

[6] We also find Walker's citation to *Merlington v. State*, 814 N.E.2d 269 (Ind. 2004), to be unavailing. That case was decided under the pre-*Anglemyer* presumptive sentencing regime, under which our supreme court held that that the trial court had improperly weighed the aggravating and mitigating circumstances. *Id*. at 273. However, under the now-effective advisory sentencing scheme, we no longer review a trial court's weighing of aggravating and mitigating circumstance. *See Anglemyer*, 868 N.E.2d at 491.

Walker's offenses, and we need not compare them with those of his co-defendants. *See Dennis v. State*, 908 N.E.2d 209, 214 (Ind. 2009).[7]

[36] In summary, considering the brutal nature of the offense and Walker's character as evidenced by his active participation in the planning and execution of the crime, we conclude that, despite Walker's young age at the time of the offense, his aggregate sentence of sixty-three years with three years thereof suspended to probation is not inappropriate.

## Conclusion

[37] The State presented evidence sufficient to establish that Walker was present at the scene of the crime and actively participated in the brutal beating death of a sixty-nine-year-old retired school teacher who had done nothing other than attempt to help one of Walker's friends. Walker helped plan the robbery, recruited others to assist in the robbery, and struck Peters with a baseball bat. Although Walker was only seventeen years old at the time of the crime, his sentence of sixty years executed and three suspended to probation does not foreclose the possibility of his rehabilitation. Under these facts and circumstances, Walker has not shown that his sentence is inappropriate.

---

[7] Moreover, both Anderson and Basford pleaded guilty to Class A felony robbery, for which the sentencing range is twenty to fifty years. *See* Ind. Code § 35-50-2-4. Thus, it is no surprise that their sentences would be shorter than Walker's, who went to trial and was convicted of the more serious crime of felony murder. We further note that Walker's sentence is less than that of the remaining participant in the murder, Phelps. This court recently affirmed Phelps's sixty-five-year sentence for murder and remanded with instructions to impose an aggregate sentence of seventy-three years after vacating his other convictions on double jeopardy grounds. *See Phelps v. State*, No. 46A03-1501-CR-23, slip op. at 11-12 (Ind. Ct. App. Nov. 15, 2015).

[38]     Affirmed.

Vaidik, C.J., and Barnes, J., concur.