# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**DANIEL CUELLER**
**AMY L. CUELLER**
The Cueller Law Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MATTHEW PAVLOVICH,    )
    )
    Appellant-Defendant,    )
    )
    vs.    )    No. 49A02-1308-CR-715
    )
STATE OF INDIANA,    )
    )
    Appellee-Plaintiff.    )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1302-FB-8855

**March 28, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Matthew Pavlovich appeals his convictions for child solicitation as a class D felony and patronizing a prostitute as a class A misdemeanor. Pavlovich raises three issues, which we revise and restate as:

I.  Whether the trial court properly denied Pavlovich's motion to dismiss the child solicitation charge;

II.  Whether the trial court properly admitted certain text messages and emails into evidence and properly permitted their authentication as having been written by Pavlovich; and

III.  Whether the trial court properly denied Pavlovich's motion for a directed verdict with respect to the child solicitation charge.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On November 9, 2011, Pavlovich contacted twenty-one-year-old S.Y. after seeing an Internet ad she had placed for escort services. Pavlovich communicated with S.Y. using a cell phone to make calls and send text messages. The last four digits of the number Pavlovich used were 2662. S.Y.'s then-boyfriend (now-husband) and "pimp," Bradford Pugh, would respond to texts from potential clients, such as Pavlovich, pretending to be S.Y., and S.Y. would speak on the phone with potential clients. Transcript at 147. Via text, Pugh arranged for S.Y. to meet Pavlovich at a Carmel hotel, and S.Y. spoke with Pavlovich over the phone to confirm the arrangements. Thereafter, Pugh stored in his cell phone the 2662 number Pavlovich had used, under the name "Matt." Exhibit 6. S.Y. went to the hotel room where Pavlovich had indicated he would be. At first, the two made small talk, and S.Y. mentioned that she had a nine-year-old sister, P.Y. Pavlovich then expressed an interest in P.Y., asking what she looked like and

2

if "she [would] be interested in doing things" that S.Y. did. Transcript at 66. S.Y. was uncomfortable with Pavlovich's questions and kept trying to change the subject, but he kept asking about P.Y. Eventually, S.Y. and Pavlovich had sex, and S.Y. left and let Pugh know that she was upset about Pavlovich's questions about P.Y.

On November 16, 2011, S.Y. and Pugh were arrested on prostitution charges unrelated to Pavlovich. S.Y. and Pugh decided to mention Pavlovich's interest in P.Y. to the police in hopes of receiving beneficial treatment in exchange for helping in an investigation of Pavlovich. Police did not initially express much interest in investigating him. On November 20, 2011, after Pugh was released from jail, S.Y. and Pugh decided to reinitiate contact with Pavlovich and discuss P.Y. with him. Posing as S.Y., Pugh texted the 2662 number Pavlovich had used to arrange their first encounter, said, "I had a surprise for u," and asked that he text back. Exhibit 7. Pavlovich texted back the next day from the 2662 number and asked what the surprise was. Pugh responded, "I talked to my 9 year old sister about meeting you. . . . I told her you wanted to be her boy friend." Id. Over the next several days Pugh (still acting as S.Y.) and Pavlovich exchanged a number of texts, with Pavlovich asking for nude pictures of P.Y. and suggesting that S.Y. engage in oral sex with P.Y. S.Y. and Pugh did send one non-nude picture of P.Y. to an email address that Pavlovich provided, which began "golfnutmi." Exhibit 8. Pavlovich was from Michigan and frequently traveled to Indiana on business. Over the course of the exchange, Pavlovich offered to pay $900 to spend two hours with both S.Y. and P.Y.

On November 30, 2011, S.Y. and Pugh met with Detective Darin Odier of the Indianapolis Metropolitan Police Department and showed him the text messages and

3

emails they had been exchanging with Pavlovich.  At that time Detective Odier decided to take over Pugh's cell phone and email accounts and continued using them to communicate with Pavlovich, posing as S.Y.  All of the communication between Detective Odier and Pavlovich occurred through the email address Pavlovich had earlier provided.  At one point, Detective Odier mentioned having an eleven-year-old niece and Pavlovich expressed interest in the niece, saying P.Y. was "too young."  Exhibit 9.  Still, Pavlovich wanted to meet with S.Y. and pay her $400 for one hour to have sex and he wanted her to bring P.Y. to watch them have sex.  On December 7, 2011, Pavlovich emailed S.Y. and said he was at a north side Indianapolis Marriott hotel.  However, he refused to give his specific room number unless S.Y. sent him a picture of her and P.Y. together in the car on their way to meet him.  Detective Odier determined that Pavlovich was a registered guest at a north side Indianapolis Marriott hotel and obtained a search warrant for his room.  Before police arrived at the hotel, S.Y. attempted to call the 2662 phone number, but the call went to voice mail.  S.Y. recognized Pavlovich's voice on the outgoing voice mail message as belonging to the person she had met on November 9, 2011.  Police then served the search warrant and arrested Pavlovich at the hotel.  Police did not attempt to search Pavlovich's cell phone.  Additionally, a subpoena to the cell phone company revealed that the 2662 number was not registered under Pavlovich's name and that it was associated with an address that was "in the middle of the highway." Transcript at 206.

4

On February 7, 2013, the State charged Pavlovich with Count I, promoting prostitution as a class B felony;[1] Count II, child solicitation as a class D felony; Count III, attempted vicarious sexual gratification as a class D felony;[2] and Count IV, patronizing a prostitute as a class A misdemeanor. Before trial, Pavlovich sought dismissal of the child solicitation charge, which the trial court denied. On June 3, 2013, the court commenced a jury trial in which Pavlovich repeatedly objected to introduction of the various text messages and emails because of the State's alleged failure to authenticate that Pavlovich had sent any of the messages. The trial court overruled these objections. At the conclusion of the State's case, Pavlovich moved for a directed verdict on all four counts, which the trial court denied. During closing argument, the State specifically contended that Pavlovich solicited P.Y. to engage in deviate sexual conduct—i.e. oral sex—with S.Y. The jury returned not guilty verdicts for promoting prostitution and attempted vicarious sexual gratification but guilty verdicts for child solicitation and patronizing a prostitute. On July 26, 2013, the court held a sentencing hearing and sentenced Pavlovich to 910 days on Count II, including 908 days suspended, and one year on Count IV, including 363 days suspended, to be served concurrently.

DISCUSSION

I.

The first issue is whether the trial court properly denied Pavlovich's motion to dismiss the child solicitation charge. We review a trial court's ruling on a motion to

---

[1] This charge was elevated from a class C to a class B felony because it alleged that Pavlovich had enticed a child under eighteen years old, P.Y., to become a prostitute. See Ind. Code § 35-45-4-4(1).

[2] This charge was based upon Pavlovich allegedly wanting to have sex with S.Y. in front of P.Y.

5

dismiss a charging information for an abuse of discretion, which occurs only if a trial court's decision is clearly against the logic and effect of the facts and circumstances. State v. Riley, 980 N.E.2d 920, 922 (Ind. Ct. App. 2013), trans. denied. Pavlovich specifically sought dismissal of the child solicitation charge pursuant to Ind. Code § 35-34-1-4(a)(5), which permits dismissal of an information if "[t]he facts stated do not constitute an offense." In deciding whether an information fails to state facts constituting an offense, we take the facts alleged in the information as true. State v. Isaacs, 794 N.E.2d 1120, 1122 (Ind. Ct. App. 2003). Facts permitted to be raised in a motion to dismiss a charging information generally concern only pre-trial procedural matters, such as jurisdictional issues, double jeopardy, collateral estoppel, and the like. See State v. King, 502 N.E.2d 1366, 1369 (Ind. Ct. App. 1987). "Questions of fact to be decided at trial or facts constituting a defense are not properly raised by a motion to dismiss." Isaacs, 794 N.E.2d at 1122. It is only when an information is facially deficient in stating an alleged crime that dismissal for failure to state an offense is warranted. See id. at 1123 (holding dismissal of charge was warranted where information alleged defendant operated a vehicle with a schedule I or II controlled substance in the body, but substances alleged to be in defendant's body were schedule IV controlled substances or non-controlled substances, and it was not a crime to operate a vehicle with such substances in the body).

Here, the charging information for Count II, child solicitation as a class D felony, alleged as follows:

> Matthew Pavlovich, on or about or between November 8, 2011 and December 7, 2011, being at least eighteen (18) years of age or older, did

6

knowingly solicit, a child under fourteen (14) years of age, that is: [S.Y.]'s nine (9) year old sister, to engage in Deviate Sexual Conduct . . . .

Appellant's Appendix at 22-23. At the time of the offense, the child solicitation statute provided in part:

A person eighteen (18) years of age or older who knowingly or intentionally solicits a child under fourteen (14) years of age, or an individual the person believes to be a child under fourteen (14) years of age, to engage in:

(1) sexual intercourse;

(2) deviate sexual conduct; or

(3) any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person;

commits child solicitation, a Class D felony.

Ind. Code § 35-42-4-6(b) (Supp. 2007) (subsequently amended by Pub. L. No. 158-2013, § 442 (eff. July 1, 2014) (subsequently amended by Pub. L. No. 247-2013, § 7 (eff. July 1, 2014))).[3]

---

[3] We observe that Public Law No. 158-2013, approved by the General Assembly on May 6, 2013, amended Ind. Code § 35-42-4-6(b) by changing subparagraph (2) to read "other sexual conduct (as defined in IC 35-31.5-2-221.5)" and by stating the severity of the crime to be a "Level 5 felony." Public Law No. 158-2013 is a voluminous act amending Indiana's criminal sentencing scheme, implementing a six-tiered "Level" sentencing structure for felony convictions in place of the four-tiered "Class" sentencing structure for felonies. However, Ind. Code § 35-42-4-6 was again amended by Public Law No. 247-2013, approved by the General Assembly five days later on May 11, 2013, which also is effective as of July 1, 2014. Public Law No. 247-2013 substantially alters Ind. Code § 35-42-4-6, but it retains the "Class" sentencing structure. Specifically, the version contained in Public Law No. 247-2013 notes that a person convicted under subsection (b) commits a "Class D felony," and that the crime can be enhanced to a "Class C felony" or "Class B felony" if certain conditions are met. Considering that the General Assembly voted to abrogate the "Class" sentencing structure in favor of the "Level" sentencing structure in Public Law No. 158-2013, this appears to be an error, and we invite the General Assembly to correct this error.

Also, we note that subsection (c) of the statute criminalizes solicitation by a person twenty-one years or older of a child between fourteen and sixteen years old, or a person the defendant believes to be a child of that age.

7

It is clear that the charging information tracks the language of the child solicitation statute and alleges the commission of every necessary element of that crime by Pavlovich. He attempts to argue that the information was defective for failing to specify precisely how he allegedly solicited P.Y. and that there were no facts showing Pavlovich ever in fact contacted P.Y. at all. However, to be sufficient, a charging information generally needs only contain a statement of the "essential facts constituting the offense charged," as well as the statutory citation, the time and place of the commission of the offense, the identity of the victim (if any), and the weapon used (if any). Laney v. State, 868 N.E.2d 561, 566-567 (Ind. Ct. App. 2007) (quoting I.C. § 35-34-1-2(d)), trans. denied. "The State is not required to include detailed factual allegations in a charging information." Id. at 567. Here, the State was not required to precisely spell out in the information how Pavlovich was alleged to have solicited P.Y. As for Pavlovich's contention that he never actually contacted P.Y., that argument goes to questions of fact that were to be decided at trial. The charging information was not facially deficient in the child solicitation charge, and accordingly we conclude that the trial court properly refused to dismiss that count.

II.

The second issue is whether the trial court erroneously admitted the text and email communications between Pugh and Detective Odier and the 2662 number and the "golfnutmi" email address while allowing the State to identify the messages from the 2662 number and "golfnutmi" email as coming from Pavlovich. We review trial court rulings on the admission or exclusion of evidence only for an abuse of discretion. Collins

v. State, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law." Id.

Pavlovich contends that the text and email messages were not properly authenticated as having been written by him. "To lay a foundation for the admission of evidence, the proponent of the evidence must show that it has been authenticated." Hape v. State, 903 N.E.2d 977, 989 (Ind. Ct. App. 2009), trans. denied. This authentication requirement applies to the substantive content of text messages purported to be sent by a party. See id. Under Indiana Evidence Rule 901(a) as it existed at the time of Pavlovich's trial, authentication of evidence was "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[4] "Absolute proof of authenticity is not required." Fry v. State, 885 N.E.2d 742, 748 (Ind. Ct. App. 2008), trans. denied. The proponent of the evidence needs to establish only a reasonable probability that the document is what it is claimed to be. Id. Once this reasonable probability is shown, any inconclusiveness regarding the exhibit's connection with the events at issue goes to the exhibit's weight, not its admissibility. Id. Additionally, authentication of an exhibit can be established by either direct or circumstantial evidence. Newman v. State, 675 N.E.2d 1109, 1111 (Ind. Ct. App. 1996).

There is admittedly no direct evidence connecting Pavlovich with either the 2662 phone number or the "golfnutmi" email address. The phone company records for the 2662 number were associated with a different name and an address described by

---

[4] The entirety of the Indiana Rules of Evidence were amended effective January 1, 2014. The amendments grammatically reworded the Rules but, at least in the case of Evidence Rule 901, did not affect substance.

Detective Odier as being "in the middle of the highway." Transcript at 206. Police did not search any cell phone Pavlovich had at the time of his arrest to verify whether it was associated with the 2662 number or whether Pavlovich had used it to text or email S.Y. As for the email address, there is no evidence of an account being set up with the email that could be directly traced back to Pavlovich. No Indiana case has addressed the admissibility of text or email messages under such circumstances, where there is a complete lack of technological or documentary evidence linking a party with a particular cell phone number or email address. Even if there was such evidence, that alone might be insufficient to authenticate any text or email messages as having been authored by the person linked to the cell phone number or email address, given that "computers can be hacked, protected passwords can be compromised, and cell phones can be purloined . . . ." Tienda v. State, 358 S.W.3d 633, 641-642 (Tex. Crim. App. 2012) (noting that majority of courts have held that the mere fact that an email purports to come from a certain person's email address or that a text came from a cell phone number assigned to a certain person is, without more, insufficient to authenticate the message as having been written by that person).

At the time of Pavlovich's trial, Indiana Evidence Rule 901(b)(4) provided that evidence could be authenticated by "[d]istinctive characteristics and the like," including "[a]pperance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." This language is very similar to Federal Rule

of Evidence 901(b)(4). In what has been described as a "watershed" opinion[5] with respect to authentication of text and email messages, the United States District Court of Maryland stated that "[t]his rule is one of the most frequently used to authenticate e-mail and other electronic records." Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 546 (D. Md. 2007). Quoting the official commentary to this rule, the Lorraine court observed:

> "[t]he characteristics of the offered item itself, considered in the light of circumstances, afford authentication techniques in great variety," including authenticating an exhibit by showing that it came from a "particular person by virtue of its disclosing knowledge of facts known peculiarly to him," or authenticating "by content and circumstances indicating it was in reply to a duly authenticated" document.

Id. In other words, "[u]se of this rule often is characterized as authentication solely by 'circumstantial evidence.'" Id.

The Texas Court of Criminal Appeals has noted the various ways in which text or email messages have been adequately authenticated as having been written by a party:

> In some cases, the purported sender actually admitted to authorship, either in whole or in part, or was seen composing it. In others, the business records of an internet service provider or a cell phone company have shown that the message originated with the purported sender's personal computer or cell phone under circumstances in which it is reasonable to believe that only the purported sender would have had access to the computer or cell phone. Sometimes the communication has contained information that only the purported sender could be expected to know. Sometimes the purported sender has responded to an exchange of electronic communications in such a way as to indicate circumstantially that he was in fact the author of the particular communication, the authentication of which is in issue. And sometimes other circumstances, peculiar to the facts of the particular case, have sufficed to establish at least a prima facie showing of authentication.

---

[5] See Tienda, 358 S.W.3d at 639 (citing Paul W. Grimm, Michael V. Ziccardi & Alexander W. Major, *Back to the Future: Lorraine v. Markel American Insurance Co. and New Findings on the Admissibility of Electronically Stored Information*, 42 AKRON L. REV. 357 (2009)).

Tienda, 358 S.W.3d at 640-641 (footnotes and citations omitted). See also People v. Downin, 828 N.E.2d 341, 350-351 (Ill. App. Ct. 2005) (holding emails were adequately authenticated as being written by defendant where victim personally knew defendant, had communicated previously with defendant through email, defendant was responsive to victim's email message, and email contained information that would have been known exclusively to him; although emails were adequately authenticated and admissible, ultimate question of authorship was for trier of fact to decide), app. denied; Commonwealth v. Amaral, 941 N.E.2d 1143, 1146-1147 (Mass. App. Ct. 2011) (holding emails were adequately authenticated where in one, defendant indicated he would be at a certain place at a certain time and he in fact appeared at that place and time, and in another email he provided a telephone number, which investigating officer immediately called and defendant answered), rev. denied; In re F.P., 878 A.2d 91, 95 (Pa. Super. Ct. 2005) (holding instant messages were adequately authenticated as having been written by defendant where defendant referred to his name and made threats and discussed events related to matters about which victim testified); Manuel v. State, 357 S.W.3d 66, 77-78 (Tex. App. 2011) (holding text messages were adequately authenticated as being written by defendant where stalking victim recognized the number from which messages originated as belonging to defendant, and victim also received voice mail messages from number and she recognized the defendant's voice), rev. refused.

Here, S.Y. testified that her meeting with Pavlovich on November 9, 2011, was arranged through texts and a phone call with the 2662 number. S.Y. identified Pavlovich in court as the man who hired her and had sex with her on that date. S.Y. also became

12

familiar with Pavlovich's voice from talking with him on the phone and in person. S.Y. also described their hotel room conversation as focusing in large part upon her nine-year-old sister P.Y., despite her discomfort and repeated attempts to change the subject. Then, on November 20, 2011, Pugh, posing as S.Y., began texting the 2662 number, saying at first, "I wanted to come see your [sic] again" and mentioning a "surprise." Exhibit 7. The first response back was not confusion as to who was texting, but instead was: "Hi! how r u? i will be back soon!" Id. The following texts were then exchanged:

2662: What is the surprise? I can come next wk!

Pugh: I talked to my 9 year old sister about meeting you.

2662: Really? What did u talk about?

Pugh: I told her you wanted to be her boy friend.

2662: Can u email me pics of her today? if she is cute I may come this wk!

2662: Cool. have u thought about being w her?

Pugh: She is super cute she looks like me but 9. I can email you some photos what's your email?

2662: Golfnutmi . . . .

Id. Pugh had a number of other communications with the 2662 number and "golfnutmi" email address, all focusing upon pictures of P.Y., sex, payments, and arrangements to meet. At one point the 2662 number texted to Pugh, "what changed ur mind about ur sister and being w her?" Id. At no time did the 2662 or "golfnutmi" user express any confusion, surprise, or disgust about discussing sex and a nine-year-old girl, or in encouraging S.Y. to have oral sex with her.

13

After Detective Odier began communicating with the "golfnutmi" email address, he began pressing for details as to what "golfnutmi" specifically wanted to do. The response was: "We talked in person about our fetish for this. I thought it was clear about what I wanted." Exhibit 9. On December 7, 2011, "golfnutmi" said that he was staying at a Marriott on the north side of Indianapolis. Detective Odier was able to confirm that Pavlovich was registered at a Marriott on the north side of Indianapolis, where he was apprehended later that evening. Before that occurred, however, S.Y. phoned the 2662 number, and she recognized the voice on the outgoing voicemail message as Pavlovich's. After Pavlovich was arrested, Detective Odier received no more emails from "golfnutmi" or any texts from the 2662 number.

We conclude that this circumstantial evidence is sufficient to authenticate the texts from the 2662 number and the emails from the "golfnutmi" address as being authored by Pavlovich. Although registered under a different name, S.Y. confirmed that the 2662 number was used by Pavlovich to arrange their encounter of November 9, 2011, and that he was still using the number on December 7, 2011, as indicated by her recognition of his voice on the outgoing voicemail message.[6] The text messages sent from the 2662 number indicate not only familiarity with S.Y., her escorting business, and their prior meeting, but also corroborate S.Y.'s testimony of what Pavlovich wanted to discuss extensively

---

[6] Pavlovich seems to take some issue with S.Y.'s ability to recognize his voice. Indiana Evidence Rule 901(b)(5) provides that an item may be authenticated by a witness's opinion recognizing a party's voice on a recording, in a transmission, or firsthand. Interpreting the parallel Federal Rule of Evidence 901(b)(5), the Seventh Circuit has held that this rule requires "that the witness have only 'minimal familiarity' with the voice." U.S. v. Cruz-Rea, 626 F.3d 929, 934 (7th Cir. 2010). S.Y. heard enough of Pavlovich's voice in person to meet this minimal requirement.

14

during that meeting—sex and nine-year-old P.Y. The texts also indicate that the user of the number did not live in central Indiana but traveled there frequently.

The "golfnutmi" email address was provided from the 2662 number being used by Pavlovich. The messages from that address continued in exactly the same vein as the texts from the 2662 number: asking for pictures of P.Y., making arrangements to meet S.Y., paying her to have sex, and wanting P.Y. to be present during the encounter. One of the later emails from "golfnutmi" also specifically mentions having had an earlier in-person discussion with S.Y. of his "fetish" of what he wanted to do. Id. "Golfnutmi" said on December 7, 2011, that he was staying at a north side Indianapolis Marriott hotel, and Pavlovich, a Michigan resident, was in fact staying at a north side Indianapolis Marriott hotel.

In sum, the user of the 2662 phone number and the "golfnutmi" email address relayed messages to "S.Y." that revealed the user's familiarity with and detailed knowledge of S.Y., as well as of highly unique matters they had discussed in person. As testified to by S.Y., only she, Pavlovich, Pugh, and the police knew of those discussions. S.Y. confirmed that Pavlovich used the 2662 number, from which was sent the "golfnutmi" email address. The user of that address accurately described where Pavlovich would be on December 7, 2011, and after his arrest on that date, the 2662 number and "golfnutmi" address went silent. Taken together, this evidence establishes a reasonable probability that the messages at issue were written by Pavlovich. Even if this evidence was not indisputable proof that Pavlovich wrote them, such proof was not required. See Fry, 885 N.E.2d at 748. Any lingering doubts about whether Pavlovich

15

wrote the messages went to their evidentiary weight, not their admissibility. See id. Pavlovich was entitled to and did argue that there was insufficient evidence that he wrote the messages, but the trial court did not abuse its discretion in admitting them into evidence.

Pavlovich makes some other arguments related to the messages. One of those is that S.Y. and Detective Odier should not have been allowed to give opinion testimony that the messages were written by Pavlovich, claiming that such testimony did not meet the requirements of Indiana Evidence Rule 701. However, to the extent their opinion testimony authenticated that the messages were written by Pavlovich, strict compliance with Evidence Rule 701 was not required. Evidence Rule 104(a) provides that when determining admissibility, a trial court is not bound by the evidence rules, except for those regarding privilege. See Lorraine, 241 F.R.D. at 539. In any event, Evidence Rule 701 allows lay witnesses to give opinion testimony that is rationally based upon the witness's perceptions. S.Y., in particular, rationally based her opinion that Pavlovich wrote the text messages and emails upon her own perceptions.

Pavlovich also argues that the messages were inadmissible hearsay. However, this argument is dependent upon there being a lack of proof that Pavlovich wrote them. Clearly, because there is sufficient evidence to authenticate the messages as having been written by Pavlovich, they qualify as non-hearsay statements by a party-opponent under Indiana Evidence Rule 801(d)(2).[7] The messages were properly introduced into evidence and authenticated as having been written by Pavlovich.

---

[7] As noted by the Lorraine court, other factors that may come into play when considering the admissibility of electronic messages include relevancy under Evidence Rule 401, the danger of unfair

The third issue is whether the trial court properly denied Pavlovich's motion for a directed verdict regarding the child solicitation charge.[8] Indiana Trial Rule 50(A) governs motions for a directed verdict, which are also called motions for judgment on the evidence. Garcia v. State, 979 N.E.2d 156, 157 (Ind. Ct. App. 2012). When a defendant moves for a directed verdict or judgment on the evidence, the trial court is required to grant the motion if: (1) the record is devoid of evidence on one or more elements of the offense; or (2) the evidence presented is without conflict and subject to only one inference, which is favorable to the defendant. Id. Our review of the denial of a motion for directed verdict or judgment on the evidence is essentially the same as review of a claim of insufficient evidence to support a conviction. Edwards v. State, 862 N.E.2d 1254, 1262 (Ind. Ct. App. 2007), trans. denied. We will neither reweigh evidence nor judge witness credibility and must consider only the evidence supporting the conviction and any reasonable inferences to be drawn therefrom. Id. We will affirm if there is substantial evidence of probative value from which a reasonable trier of fact could have concluded beyond a reasonable doubt that the defendant was guilty of the charged crime. Id.

As noted above, the offense of child solicitation is governed by Ind. Code § 35-42-4-6(b), which provided at the time of Pavlovich's offense:

---

prejudice under Evidence Rule 403, and the "best evidence" rule as embodied in Evidence Rules 1000-1008. See Lorraine, 241 F.R.D. at 538. Pavlovich makes no argument that any of these rules were violated here.

[8] On appeal, Pavlovich makes no argument that the trial court improperly denied his motion for a directed verdict with respect to the patronizing a prostitute charge.

A person eighteen (18) years of age or older who knowingly or intentionally solicits a child under fourteen (14) years of age, or an individual the person believes to be a child under fourteen (14) years of age, to engage in:

    (1)    sexual intercourse;

    (2)    deviate sexual conduct; or

    (3)    any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person;

commits child solicitation, a Class D felony.

Also, the child solicitation statute, in subsection (a), defines "solicit" as follows:

As used in this section, "solicit" means to command, authorize, urge, incite, request, or advise an individual:

    (1)    in person;

    (2)    by telephone;

    (3)    in writing;

    (4)    by using a computer network (as defined in IC 35-43-2-3(a));

    (5)    by advertisement of any kind; or

    (6)    by any other means;

to perform an act described in subsection (b) or (c).

Ind. Code § 35-42-4-6(a).

The State charged that Pavlovich "on or about or between November 8, 2011 and December 7, 2011, being at least eighteen (18) years of age or older, did knowingly solicit, a child under fourteen (14) years of age, that is: [S.Y.]'s nine (9) year old sister, to engage in Deviate Sexual Conduct . . . ." Thus, in order to convict Pavlovich of child

solicitation as a class D felony, the State was required to prove that he was at least eighteen years old and knowingly solicited P.Y., who was under fourteen, to engage in deviate sexual conduct.

Pavlovich argues that "[t]he majority of evidence presented by the State consisted of improperly authenticated hearsay documents . . . ." Appellant's Brief at 32. He also argues that "the State's case was completely devoid of any evidence establishing that [he] 'solicited' (as that term is defined in the Child Solicitation statute) minor PY." Id. at 33. The State contends that the text messages demonstrate that "Pavlovich both solicited child pornography of S.Y.'s sister and solicited a prostitution encounter with S.Y.'s sister." Appellee's Brief at 29. The State also argues that Pavlovich "incorrectly contends that he had to solicit S.Y.'s sister directly" but that the statute "includes no such requirement" and specifically provides that the "solicitation may be done 'by any . . . means.'" Id.

Initially, we note that to the extent Pavlovich argues that his conviction was based upon improperly authenticated evidence, we have discussed and dispensed with this assertion in part II, *supra*. Next, we observe that it appears neither this court nor the Indiana Supreme Court have addressed a similar fact pattern in that, although Pavlovich was not mistaken that he was speaking about a real child, his communications were directed to the child's twenty-one year old sister. This is a distinguishing factor from other cases in which a defendant interacts with an adult, usually a police officer, who is posing as a child. See, e.g., Laughner v. State, 769 N.E.2d 1147 (Ind. Ct. App. 2002) (affirming conviction for attempted child solicitation based on communications with law

enforcement officer posing as child, prior to amendment of statute to permit convictions based upon defendant's belief that he or she was communicating with a child), reh'g denied, trans. denied, cert. denied, 538 U.S. 1013, 123 S. Ct. 1929 (2003), overruled on other grounds by Fajardo v. State, 859 N.E.2d 1201, 1206 n.9 (Ind. 2007).

Thus, this case presents the question of whether it is a crime under Ind. Code § 35-42-4-6(b) for a person to direct communications to an intermediary who the person believes is passing the communications on to the child or is acting on behalf of the child. We note that "the crime of child solicitation is completed at the time of the utterance," and "[t]here need not be any attempt to carry out the solicited act at any time in the immediate future." Neff v. State, 915 N.E.2d 1026, 1034 (Ind. Ct. App. 2009) (quoting LaRose v. State, 820 N.E.2d 727, 732 (Ind. Ct. App. 2005), trans. denied), aff'd on reh'g, 922 N.E.2d 44 (Ind. Ct. App. 2010), trans. denied. Subsection (a) of the statute defines what constitutes solicitation, and such conduct includes, under subparagraph (6), urging or requesting an individual "by any other means" than those otherwise listed in the statute to perform a sexual act including intercourse, deviate sexual conduct, or other fondling or touching. Certainly communicating through an intermediary, as was done here, satisfies the "any other means" method of child solicitation.

We find that the State presented evidence of probative value from which a jury could find that Pavlovich solicited P.Y. Notably, the text messages and email exchanges demonstrate that Pavlovich believed that P.Y. was receiving his communications and that P.Y. was a party to the exchanges. The evidence presented reveals that Pugh, using S.Y.'s phone, texted Pavlovich that S.Y. had a "surprise," Pavlovich asked what the

20

surprise was, and the response was that S.Y. talked to P.Y. about meeting him. Exhibit 7. Pavlovich also asked S.Y. regarding P.Y.'s mindset: "how does she feel? How much is she willing to do?" Id. The response was that "[s]he's OK with it I told her I would split the money." Id. Pavlovich asked regarding P.Y.: "Does she even know what sex and every thing [sic] is? what have u described to her about u and I being w her?" Id. The response was that P.Y. "is a smart girl, she already knew and was like that would be fun . . . ." Id. At one point, Pavlovich requested that S.Y. send pictures of P.Y. to his "golfnutmi" email address, and the response from S.Y.'s phone was that P.Y. agreed to send one photo but that she "wanted to make you wait. LoL if you want to take more here you can. :-)." Pugh, using S.Y.'s phone, then told Pavlovich that P.Y. "picked out one for me to send. As soon as I get back to my house I can send it." Id. Also, Pavlovich at one point asked via email to S.Y. "[w]hat are you both willing to do on Weds for the $1000? Be specific :-) please." Id. Pavlovich also asked via email if he could talk to P.Y. on the phone.

We have previously observed two distinct purposes behind Ind. Code § 35-42-4-6: (1) protecting children from an adult urging the child to have sex; and (2) "interdicting child predators before they are able to solicit an actual child . . . ." See LaRose, 820 N.E.2d at 730-731. We find that both purposes are served in this instance. We further observe that subsection (a) provides that a person may "solicit" a child "by advertisement of any kind." Ind. Code § 35-42-4-6(a)(5). We believe that this subparagraph underscores a related purpose, that being to criminalize the act of seeking out children to perform sexual acts, because committing child solicitation by advertisement, which

21

again, is completed at the time of the utterance, does not involve direct communication between the perpetrator and a child.[9]

Finally, regarding the substance of Pavlovich's acts, the evidence most favorable to the conviction reveals that Pavlovich solicited P.Y. to engage in oral sex with S.Y. Specifically, Pavlovich sent text messages to S.Y. including: "I would love to see u go down on her or she down on u. can u take pic of that?" Exhibit 7. "Is all this talk getting u excited to eat her? Will u try to eat her tonite?" Id. "Yes. this is a dream come true. incest is best!" Id. "Have you licked her yet or has she licked you?" Id. "[W]hat changed ur mind about ur sister and being w her?" Id.

Given the facts of this case, including that Pavlovich communicated with a person he believed to be S.Y., who was P.Y.'s sister and who he believed was passing such communications on to P.Y., we conclude that the court did not err when it denied Pavlovich's motion for a directed verdict, and furthermore the State presented evidence of a probative nature from which the jury could find that Pavlovich committed child solicitation as a class D felony. See People v. Douglas, 296 P.3d 234, 243 (Colo. App. 2012) (noting that "the efficacy of the statute prohibiting enticement of children for sexual activity 'would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective'" (quoting United States v. Murrell, 368 F.3d 1283, 1287 (11th Cir. 2004))) (citing United States v. Spurlock, 495 F.3d 1011, 1014 (8th Cir. 2007) (federal enticement statute does not exempt "sexual predators who attempt to harm a child by exploiting the child's natural impulse to trust

---

[9] Indeed, because the crime is committed at the utterance, it appears that a child need not observe or read the advertisement in order for the crime to be completed.

and obey her parents"), cert. denied, 552 U.S. 1054, 128 S. Ct. 687 (2007)), reh'g denied, cert. denied, 2013 WL 673966 (Colo. 2013); State v. Wilson, 128 So.3d 946, 949 (Fla. Dist. Ct. App. 2013) (Torpy, C.J., concurring specially) (noting under applicable statute that "[w]hen the solicitor asks, the crime is committed," that "[t]he mere posting of a general solicitation on a 'local bulletin board service,' for example, is a completed crime under this statute, irrespective of whether it is read by anyone," and that "[i]t follows that a solicitation can occur if, instead of placing the message with a bulletin board service, the request is communicated through another person, with the intent that the message reach the minor. This could be established in either of two circumstances: where the solicitor believes that the intermediary is acting as the agent for the child or where the solicitor intends for the intermediary to pass the message on to the child").

CONCLUSION

For the foregoing reasons, we affirm Pavlovich's convictions for child solicitation as a class D felony and patronizing a prostitute as a class A misdemeanor.

Affirmed.

ROBB, J., concurs.

BARNES, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MATTHEW PAVLOVICH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1308-CR-715 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BARNES, Judge, concurring in part and dissenting in part.**

I fully concur with the majority's resolution of Issues I and II. I must respectfully dissent, however, from the majority's resolution of Issue III. I cannot agree that Pavlovich completed the act of child solicitation under the facts and circumstances here.

In considering whether Pavlovich was properly convicted of child solicitation, I am mindful of the rule of lenity, which requires that criminal statutes be strictly construed against the State. Morris v. State, 921 N.E.2d 40, 43 (Ind. Ct. App. 2010), trans. denied. If there is ambiguity in a criminal statute, it must be resolved in favor of the accused. Id. Criminal statutes should be construed to prohibit only that conduct clearly falling within the spirit and letter of the statutory language, while not being narrowed to the point that they exclude cases that the language fairly covers. Starr v. State, 928 N.E.2d 876, 878 (Ind. Ct. App. 2010), trans. denied.

I acknowledge that cases have said, "the crime of child solicitation is completed at the time of the utterance." LaRose v. State, 820 N.E.2d 727, 732 (Ind. Ct. App. 2005), trans. denied. I also agree that the child solicitation statute serves two State interests: protecting actual children from the inherent evil of being urged by an adult to have sex, regardless of whether the sex act is consummated, and also "to interdict child predators before they are able to solicit an actual child . . . ." Id. at 730-31. I might also be persuaded that child solicitation can be consummated through the use of a third-party intermediary.

Regardless, the statute on its face requires that, in order for the act of child solicitation to occur, an adult must "knowingly or intentionally solicit[] a child under fourteen (14) years of age, or an individual the person believes to be a child under fourteen (14) years of age . . . ." I.C. § 35-42-4-6(b). Here, Pavlovich never commanded, authorized, urged, incited, requested, or advised P.Y. to do anything; rather, he essentially urged S.Y. to urge P.Y. to engage in oral sex with each other, but S.Y. did not do so. No illicit communications ever reached a child under fourteen years old or a person pretending to be a child. Although the State does have an interest in interdicting child predators before they can solicit an actual child, to allow a conviction for completing the act of child solicitation where no actual communication has ever occurred with a child or with someone posing as a child goes beyond the plain language of the statute in my opinion. Any ambiguity about whether the child solicitation statute should apply to these facts must be resolved in favor of Pavlovich. See Morris, 921 N.E.2d at 43. As for the fact that the child solicitation statute criminalizes solicitation through

25

"advertisement" or "any other means," I do not believe those provisions apply to strictly private conversations between adults where the conversations are never communicated to or seen by any child.

I also am not persuaded by the extra-jurisdictional cases cited by the majority. The Federal, Colorado, and Florida statutes addressed in those cases all expressly criminalize not only completed solicitation or enticement of a child to have sex, but also attempts to do so. See 18 U.S.C. § 2422(b); Colo. Rev. Stat. § 18-3-305(1); Fla. Stat. § 847.0135(3)(a). There is no such "attempt" language in our child solicitation statute. And, the State never argued before the trial court, the jury, or this court that Pavlovich could be guilty of attempted child solicitation under our general attempt statute. In the absence of any such argument by the State or of the jury being instructed on the requirements of the attempt statute, I decline to consider whether Pavlovich could have been convicted of attempted child solicitation. Cf. Delagrange v. State, No. 49S04-1304-CR-249, slip op. p. 5 (Ind. Mar. 18, 2014) (expressly noting that defendant had been charged with and convicted of attempted child exploitation, not child exploitation, in rejecting arguments attacking convictions); King v. State, 921 N.E.2d 1288, 1291 (Ind. 2010) (holding that statute criminalizing dissemination of matter harmful to minors "unambiguously" requires that the matter "must in fact be distributed to a child" in order for crime to be completed, but that conviction for attempted dissemination, where defendant had been charged with that offense and found guilty of it by a jury, was proper).

I do not wish this dissent to be seen as any kind of "condoning" of Pavlovich's disgusting actions and words. Still, defendants only can be convicted of crimes of which they are charged and according to the plain language of the criminal code. Given the language of the child solicitation statute, I do not believe there is sufficient evidence to support Pavlovich's conviction for that offense. I vote to reverse his conviction for child solicitation and affirm his conviction for patronizing a prostitute.