FILED

Dec 22 2020, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Wisdom,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 22, 2020

Court of Appeals Case No.
20A-CR-931

Appeal from the
Vanderburgh Circuit Court

The Honorable
Kelli Fink, Magistrate

Trial Court Cause No.
82C01-1412-F2-4970

**Vaidik, Judge.**

# Case Summary

[1] To authenticate under Evidence Rule 901, the State need show only the evidence is what the State purports it to be. An Instagram account and photos from Facebook tending to show Michael Wisdom was a member of a gang

were properly admitted. A detective testified she recognized Wisdom and many known gang members in the Facebook photos and Instagram posts, and that the Instagram account itself appeared to be associated both with Wisdom—as his name was on the account and the vast majority of pictures were of him— and with the gang—as the account's username and several photo captions referenced the gang. This testimony was sufficient to show the Facebook photos and Instagram account were what the State purported them to be.

[2] There was also no double-jeopardy violation. In the first phase of the bifurcated trial, Wisdom was found not guilty of criminal-organization activity, a charge which includes a gang-related element. He was found guilty of possession of a controlled substance. In the second phase, the jury also found him guilty of a gang-related sentencing enhancement. Wisdom argues his acquittal of criminal-organization activity in the first phase prohibited the State from proceeding with the enhancement charge in the second phase under the statutory-elements test and the actual-evidence test set forth in *Richardson v. State*. 717 N.E.2d 32 (Ind. 1999). Because criminal-organization activity and the enhancement require different statutory elements and because there is not a reasonable possibility the jury used the same evidence to acquit Wisdom of criminal-organization activity and to convict him of the enhancement, we find no violation of his rights.

# Facts and Procedural History

[3]     In November 2014, Detective Michael Sides of the Evansville Police Department executed a search warrant at the home of Mary Chrisler. Chrisler lived at the home with her adult children, Kendra Jones and Wisdom. In a bedroom closet, Detective Sides discovered a handgun, scale, box of baggies, box of latex gloves, and twenty-two pills. Analysis of the pills revealed a mixture of acetaminophen and hydrocodone—a schedule II controlled substance—with a total weight of 8.92 grams. The room also contained a wallet with Wisdom's identification card that showed the home to be his address and a sweatshirt with the phrase "WB3" and "F*ck Da Opps[.]" Tr. p. 29. Hand drawn on the bedroom wall were the phrases "life of a savage" and "Wagg Block 300," which is a gang in the Evansville area.[1] *Id.* at 23.

[4]     The State charged Wisdom with Level 3 felony dealing in a schedule II controlled substance (Count I), alleging Wisdom "was in possession of a firearm when he possessed a schedule II controlled substance with the intent to deliver that substance." *Id.* at 8; *see also* Ind. Code § 35-48-4-2(a)(2)(C). As to Count I, the State also filed the gang enhancement alleging Wisdom committed the underlying offense of possession with intent to deliver a schedule II controlled substance while a "member of a gang" and "at the direction of or in affiliation with a criminal gang." Appellant's App. Vol. II p. 46; *see also* Ind.

---

[1] The criminal gang in this case is referred to as "Wagg Block 300" and "300 Wagg Block" interchangeably throughout the record. For continuity, we will use "Wagg Block 300."

Code § 35-50-2-15(b). The State also charged Wisdom with Level 6 felony criminal-organization activity (Count II), alleging Wisdom committed an offense "with the intent to benefit, promote, or further the interests of" Wagg Block 300. Appellant's App. Vol. II p. 44; *see also* Ind. Code § 35-45-9-3(c)(1).

[5] The trial occurred over two days in May 2015. The trial was bifurcated, with Counts I and II to be tried in the first phase and the gang enhancement to be tried, if necessary, in the second phase. In the first phase, Crystal Thomas, another detective with the Evansville Police Department, testified as to her experience with Wagg Block 300. During her testimony, the State sought to introduce Wisdom's alleged Instagram account and pictures posted on Facebook. The defense objected, arguing this evidence had not been properly authenticated under Indiana Evidence Rule 901. The court admitted the exhibits "[b]ased on the fact that [it could] see his pictures and identify him as Michael Wisdom" and also because the identifying information on the account included Wisdom's full name and a username associated with the gang. Tr. p. 136.

[6] The State first introduced the Facebook photos. Detective Thomas testified one photo appeared to be a promotional poster for the gang and included a picture of Wisdom. Other photos included Wisdom with individuals Detective Thomas believed to be members of Wagg Block 300 and to have previously been "convicted of criminal gang activity." *Id.* at 162. Often in the photos, Wisdom or some of the other individuals were "holding up the 300 hand sign[.]" *Id.*

[7]     The State then introduced an Instagram account. Detective Thomas believed the account to be Wisdom's because the Instagram identifier included his full name, the account's "username"—Block_burna300—was a nickname associated with the gang, and a "vast majority of the photos" on the account were "selfies" of Wisdom. *Id.* at 163, 164. Again, the photos often depicted Wisdom with individuals Detective Thomas believed to be members of Wagg Block 300 and included captions referencing "gang 300." *Id.* at 166. The account also included videos of Wisdom, including one in which he is holding cash and "saying that he had money, [was] making money on Wagg Block." *Id.* at 165. The State also presented handwritten rap lyrics discovered among Wisdom's possessions, which Detective Thomas testified seemed to reference Wagg Block 300 and a criminal lifestyle.

[8]     The jury was sent back to deliberate on Counts I and II. On Count I, the jury returned a verdict of not guilty of dealing (possession with intent to deliver) but found Wisdom guilty of the lesser-included offense of Level 4 possession of a schedule II narcotic drug. *See* Ind. Code § 35-48-4-6(a). The jury also found Wisdom not guilty of Count II (criminal-organization activity). The State indicated it intended to proceed with the gang-enhancement phase of the trial. The defense objected "based upon the fact that the Jury's verdict in Count [II] which is Criminal Gang Activity, he was found not guilty in that Count." Tr. p. 220. Over the defense's objection, the court proceeded to the enhancement phase and allowed the State to make new argument to the jury. The jury found Wisdom guilty on the enhancement, which required the court to sentence him

to an "additional fixed term of imprisonment equal to the sentence imposed for the underlying felony." I.C. § 35-50-2-15(d)(1). The court sentenced Wisdom to eight years on Count I, plus a gang enhancement of eight years, for a total of sixteen years.

[9] Earlier this year, Wisdom sought and received permission to file this belated appeal.

# Discussion and Decision

## I. Authentication of Evidence

[10] Wisdom challenges the "admission of the Instagram and Facebook posts[.]" Appellant's Br. p. 9. Admission or exclusion of evidence is within the sound discretion of the trial court, and we will reverse such a decision only if the trial court abused that discretion. *Kindred v. State,* 973 N.E.2d 1245, 1252 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*. An abuse of discretion occurs when the trial court's decision is clearly against the logic, facts, and circumstances presented. *Id.* We do not reweigh evidence or judge the credibility of witnesses, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.*

[11] Wisdom argues the challenged social-media posts were not properly authenticated under Evidence Rule 901(a), which provides, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the

proponent claims it is." "Once this reasonable probability is shown, any inconclusiveness regarding the exhibit's connection with the events at issue goes to the exhibit's weight, not its admissibility." *Pavlovich v. State*, 6 N.E.3d 969, 976 (Ind. Ct. App. 2014), *trans. denied*. "Authentication of an exhibit can be established by either direct or circumstantial evidence." *Id.* "Absolute proof of authenticity is not required." *Fry v. State*, 885 N.E.2d 741, 748 (Ind. Ct. App. 2008), *trans. denied*.

[12] Wisdom argues the State did not present sufficient evidence to authenticate the Facebook photos and Instagram account because instead of introducing "evidence of a social media account through a user who has personal knowledge of the account's owner" the State provided only "the detective's hunch that this account belonged to Wisdom." Appellant's Br. p. 16. Many cases involving social-media accounts hinge on evidence of the account's owner. In *Wilson v. State*, the State introduced gang-related Twitter posts allegedly written by the defendant. 30 N.E.3d 1264, 1269 (Ind. Ct. App. 2015), *trans. denied*. To authenticate the posts as being authored by the defendant, the State presented a witness who testified she often communicated with the defendant through that Twitter account. *Id.* We held this testimony was sufficient to authenticate the Twitter posts as being authored by the defendant. *Id.* In *Richardson v. State*, we held a statement made in Facebook messages was not properly authenticated because the State did not present evidence the Facebook account belonged to the defendant nor did it "present any other

indicia of reliability establishing [the defendant] as the author of the contested statement." 79 N.E.3d 958, 964 (Ind. Ct. App. 2017), *trans. denied*.

[13] However, those cases dealt with incriminating textual communications made through social-media accounts where the State sought to establish the defendant authored those communications. Due to the inherent anonymity of social media, the author of posts or other communications made through this medium can be difficult to confirm, as generally no one sees who composed the messages and "anyone who signed into the [social-media account] . . . could compose messages[.]" *Id.* at 963. Where the State is claiming the defendant made the statements through the social-media account, evidence of the account's owner is often necessary to authenticate those statements. The exhibits admitted here, however, were (1) several photographs taken from a Facebook account and (2) an Instagram account showing photos and videos of the defendant.

[14] The admissibility of photos or videos taken from online social-media platforms like Facebook and Instagram has not been specifically addressed in Indiana. However, federal circuits have addressed this issue. *See United States v. Farrad*, 895 F.3d 859, 879-80 (6th Cir. 2018). In *Farrad*, the defendant was charged with illegally possessing a firearm. The State introduced photos taken from Facebook purporting to show Farrad holding a firearm. The Sixth Circuit held that because the details of the Facebook account matched Farrad and the photos appeared to show Farrad, his tattoos, and his apartment, the photos cleared "the relatively lower hurdle of authentication." *Id.* at 878; *see also United States v.*

*Vázquez-Soto*, 939 F.3d 365, 374 (1st Cir. 2019) (Facebook photo properly authenticated through the testimony of a witness he recognized the defendant in the photo). Courts have further applied this standard to social-media accounts as a whole. *See United States v. Recio*, 884 F.3d 230, 237 (4th Cir. 2018) (authenticating Facebook account because government "sufficiently tied" the account to defendant by showing the username of the account was his, the email address associated with the account was his, and more than a hundred photos on the account were of him).

[15] Therefore, the authentication of social-media evidence turns on whether there is sufficient evidence to support a finding it is what the claimant purports it to be. And while the source of the evidence may sometimes be needed, authentication "depend[s] on context." *United States v. Vayner*, 769 F.3d 125, 133 (2nd Cir. 2014). Here, the State claimed these exhibits to be "documentation of [Wisdom's] association with confirmed members of [Wagg Block 300]." Tr. p. 137. Unlike in *Wilson* and *Richardson*, these social-media posts were not being used to show Wisdom was the source of some incriminating communication. Rather, his mere presence in the Facebook photos and association with the Instagram account were used by the State to show Wisdom was affiliated with other members of Wagg Block 300.

[16] Regarding the Facebook photos, Detective Thomas testified she recognized Wisdom in the photos and believed many of the other individuals in the photos were Wagg Block 300 members who had been convicted of gang-related activities. Relating to the Instagram account, Detective Thomas testified (1) the

account was registered under Wisdom's full name; (2) Wisdom was in a "vast majority" of the photos, which appeared to be "selfies" or photos he took of himself; (3) the account's username—Block_burna300—was a nickname associated with Wagg Block 300; (4) a video on the account featured Wisdom saying he was making money on Wagg Block; and (5) some pictures had captions that appeared to be associated with the gang, such as "gang 300[.]" *Id.* at 131, 164, 166. This is sufficient to authenticate the Facebook photos and Instagram account as being what the State purported them to be.

[17] The trial court did not abuse its discretion by admitting the contested exhibits.[2]

# II. Double Jeopardy

[18] Wisdom also argues the State should not have been allowed to go forward on the gang enhancement in the second phase of the trial because he was acquitted of criminal-organization activity in the first phase of the trial. Specifically, he asserts the enhancement phase constituted double jeopardy under the Indiana

---

[2] Electronic photos are susceptible to manipulation, and "the various questions raised by potentially altered social-media images could conceivably be quite interesting." *Farrad*, 895 F.3d at 874 (quotation omitted). However, this case does not present those questions. Instead, there was indicia of reliability and no indication of fabrication or manipulation. In fact, trial counsel seemed to acknowledge the photos and video were of Wisdom in the closing argument: "Whether [Wisdom] associated with [Wagg Block 300] or not I think is probably pretty reasonable through his admissions from some of the pictures and video that you saw." Tr. p. 209. And while Wisdom's trial counsel did argue the accounts could have been created by someone else—a "catfish" theory—again the source of the evidence here was not essential. What matters is whether the evidence was what the State purported it to be: photos and videos of Wisdom. And there did not appear to be anything questioning their authenticity.

Constitution because it gave the State "a second bite at the apple" to prove the fact of his gang involvement. Appellant's Br. p. 11.

[19] Article 1, § 14 of the Indiana Constitution provides, in part, that "[n]o person shall be put in jeopardy twice for the same offense." Under this provision, two offenses are the "same offense" if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49.[3]

[20] Wisdom first argues prosecution on the gang enhancement violated the statutory-elements test because the enhancement included "an issue upon which [the jury] already deliberated." Appellant's Br. p. 13. We first note it is unclear whether the statutory-elements test even applies to claims of double jeopardy based on successive prosecutions. *See Garrett v. State*, 992 N.E.2d 710 (Ind. 2013) (applying only the actual-evidence test to a successive-prosecution claim); *see also Wadle v. State*, 151 N.E.3d 227, 244 n.15 (Ind. 2020). But even if it does, the test has not been met here because criminal-organization activity and the gang enhancement have different elements. Criminal-organization

---

[3] While this appeal was pending, our Supreme Court overruled *Richardson* as it relates to claims of "substantive double jeopardy," i.e., claims of double jeopardy based on multiple convictions. *See Wadle v. State*, 151 N.E.3d 227 (Ind. 2020). However, it did not disturb *Richardson* as it relates to claims of "procedural double jeopardy," i.e., claims of double jeopardy based on multiple prosecutions. *Id*. at 244 n.15 ("Because Wadle's case presents no question of procedural double jeopardy, we expressly reserve any conclusion on whether to overrule *Richardson* in that context."). Wisdom makes a claim of procedural double jeopardy, so we apply *Richardson*.

activity requires committing an offense "with the intent to benefit, promote, or further the interests of" a gang, while the gang enhancement requires committing an offense while a "member of a gang" and "at the direction of or in affiliation with" a gang. I.C. §§ 35-45-9-3(c)(1), 35-50-2-15(b). As the State points out, "the question of whether a defendant acted with intent to benefit a gang is distinct from the question of whether a defendant acted while affiliated with a gang[.]" Appellee's Br. p. 25.

[21] Wisdom also argues prosecution on the gang enhancement violated the actual-evidence test because during the enhancement phase the State "rested on the evidence that had already [been] presented at trial to prove the evidence for Count II." Appellant's Br. p. 13. It is true the State presented no new evidence during the enhancement phase, relying only on evidence already presented. However, the question under the actual-evidence test is not whether the same evidence was **presented** but whether the trier of fact **considered and relied upon** the same evidence to make the two decisions.

[22] When, as here, the alleged double-jeopardy violation involves "multiple verdicts, not simply multiple convictions, on the same facts," we apply the modified *Richardson* actual-evidence test as laid out in *Garrett*. 992 N.E.2d at 721. That test asks whether "there is a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of the offense for which the defendant was acquitted may also have been used to establish all of the essential elements of the offense for which the defendant was convicted." *Id.* at 723. "The existence of a 'reasonable possibility' turns on a practical

assessment of whether the [fact-finder] may have latched on to exactly the same facts" for both verdicts. *Id.* at 720 (citation omitted). "We evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel." *Id.*

[23] In *Garrett*, the defendant was charged with two counts of rape, among other charges, for raping the same woman twice in one evening. The jury acquitted him of the first rape count but hung on the second. The State then retried the defendant in a bench trial on the second count, presenting nearly identical evidence of the first rape (which the defendant was acquitted of in the first trial) and very little evidence of the second rape (which was the offense charged in the second trial). The judge found the defendant guilty. Our Supreme Court reversed, applying the modified actual-evidence test and finding there was a "reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of the offense for which the defendant was acquitted may also have been used to establish all of the essential elements of the offense for which the defendant was convicted." *Id.* at 723. Specifically, the Court stated that because "the State presented the same evidence of" the first rape at both trials and "given the relative paucity of evidence on retrial concerning" the second rape, it was reasonable to assume evidence of the first rape—of which defendant was acquitted—was used during the retrial to convict the defendant in the second trial. *Id.*

[24] Applying the same test here, we reach the opposite conclusion. Notably, Wisdom makes no argument as to the jury's use of the gang evidence in the two

phases of the trial, stating only there could be "no question" the jury based both decisions on the same evidence because no new gang evidence was presented during the second phase. Appellant's Br. p. 13. We disagree. In Count I, Wisdom was charged with dealing (possession with intent to deliver) in a schedule II controlled substance while in possession of a firearm, with a sentencing enhancement for committing the offense while a "member of a gang" and "at the direction of or in affiliation with" a gang. In Count II, he was charged with dealing in a schedule II controlled substance "with the intent to benefit, promote, or further the interests of a criminal gang." On Count I, the jury found Wisdom guilty of the lesser-included offense of possession but not dealing (possession with intent to deliver) and also found him guilty on the enhancement. On Count II, the jury found Wisdom not guilty. Taken together, the verdicts on Count I and its enhancement—guilty of possession but not dealing and guilty of committing possession while a "member of a gang" and "at the direction of or in affiliation with" a gang—indicate the jury found Wisdom not guilty on Count II because of the dealing element, not because of the gang element.

[25] Furthermore, like in *Garrett*, evidence presented at trial indicates what evidentiary facts the fact-finder relied on. Here, the evidence for dealing was limited to the presence of the baggies and the amount of the pills. On the other hand, there was plenty of evidence of gang membership and affiliation: the art on his bedroom walls, his gang-related clothing, the rap lyrics, and the social-media posts. The evidence taken together indicates the jury did not "latch on"

to the same facts to acquit Wisdom of Count II and to convict him of the enhancement because the acquittal was based on the dealing evidence (or lack thereof) and the enhancement was based on the overwhelming gang evidence. And therefore there is no reasonable possibility the jury relied on the same evidentiary facts to acquit Wisdom of criminal-organization activity and to find him guilty of the gang enhancement.

[26] We therefore conclude Wisdom was not twice prosecuted for the same offense in violation of the Indiana Constitution.[4]

[27] Affirmed.

Bailey, J., and Weissmann, J., concur.

---

[4] The State argues a double-jeopardy analysis is not appropriate here because a sentencing enhancement "is not an 'offense' for double jeopardy purposes[.]" Appellee's Br. p. 18. Recently, in *Wadle*, the Supreme Court reiterated that "an enhanced punishment, whether based on attendant circumstances or on a prior conviction, presents no 'double jeopardy issue at all.'" 151 N.E.3d at 254 (quoting *Workman v. State*, 716 N.E.2d 445, 448 (Ind. 1999)). But *Wadle* deals with substantive double-jeopardy issues and not claims of procedural double jeopardy as we have here. *See* note 2, *supra*. As our Supreme Court did in *Wadle*, we decline to extend its holding to procedural double-jeopardy claims.